## CANAVAN v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Term. November, 1902.)

1. LIFE INSURANCE—CHANGE OF BENEFICIARY—CONSENT OF COMPANY—PAYMENT—VALIDITY

A life policy, payable to insured's executors or administrators, or to the beneficiary thereunder, also provided that the company might pay a claim to any relative by blood, etc., and that such payment should discharge liability. It further reserved the right to change the beneficiary with the consent of the company by written notice to it. Insured and plaintiff went to a branch office of the company, and insured said he desired to have the policy made payable to plaintiff, who would thereafter pay the premiums. Thereupon the manager "wrote on a blank," which he and the insured both signed, the manager saying "it would be all right." The policy and premium receipt book were delivered to plaintiff, who immediately paid 10 weeks' premiums in advance, and continued in possession of the policy, and to pay premiums on it until after insured's death. Plaintiff incurred certain expenses in his burial. The company, with notice thereof, paid the money to a sister of insured, who was appointed administratrix of his estate. *Held*, that plaintiff having failed to get the consent of the company to the substitution of himself as beneficiary, as required by the policy, the payment to the sister was good, and plaintiff could not recover from the company for the expenses incurred.

MacLean, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by John J. Canavan against the John Hancock Mutual Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before FREEDMAN, P. J., and BLANCHARD and MacLEAN, JJ.

Quintin & Foulk, for appellant.
Langbein & Langbein, for respondent.

BLANCHARD, J. This is an appeal from a judgment entered in the Municipal Court in favor of the defendant. The action was brought to recover the sum of $228 on a policy of insurance issued by the defendant on the life of one Connell, payable to his executors or administrators, or to the beneficiary thereunder. It further provided that: "The company may pay a claim under this policy to any relative by blood, * * * or to any other person in the judgment of said company equitably entitled to the same by reason of having incurred expenses in any way on behalf of the insured for his burial, or for any other purpose, and the receipt of any such persons shall be conclusive evidence that such sum has been properly paid, and discharge the company from liability under this policy." It also further provides "that the right is also reserved to change the beneficiary from time to time with the consent of the company by a written notice to said company, but payment upon presentation of the policy and the premium receipt book shall be a discharge of the company."

The home office of the defendant company is in Boston, Mass., and the policy was taken out in that state. At that time the insured was a

resident of Massachusetts, and came into this state about three years before his death. "Around the nineteenth of June, 1901," according to the evidence in the case, the insured and plaintiff went together to the branch office of the defendant in this city, the insured taking the policy and premium receipt book with him, and met the manager. The insured then told the manager that he desired to have the policy made payable to the plaintiff, who would thereafter pay the premiums, and after some further conversation the manager "wrote on a blank," which the insured and the manager both signed, and the manager said "it would be all right." The policy and book were then delivered to the plaintiff, who immediately paid 10 weeks' premiums in advance, and he continued in possession of the policy and to pay the premiums upon it until after the death of the insured, which took place on the 16th of February, 1902. After the death of the insured the plaintiff employed an undertaker, buried the insured, and thereby assumed a liability of a little more than $100. He also called at the office of defendant to present his claim, and upon request he left the policy, book, and proof of death with the company, and was told that he would be notified when he would get the money. Later he called and was informed that the money had been paid to a sister of the insured. He asked the manager for the policy and book, and the manager told him he did not have them, and that the company would not give them up.

It appears that the sister of the insured took out letters of administration on his estate in Boston, Mass., and as administratrix thereof demanded the payment of the policy, and the defendant company paid it to her in full, and took her receipt therefor. We fail to see why that is not a legal bar to plaintiff's right to recover in this action. Under the terms of the policy the defendant was authorized to pay the amount of the policy to any blood relative. That is precisely what the defendant did. It took a proper receipt, which the policy declared should be conclusive evidence that the money was paid, and that such payment should discharge the company from further liability.

The plaintiff failed to protect his rights, and the law does not permit us to aid him now. Before paying the premium and incurring expense he failed to get the consent of the defendant to the substitution of himself as beneficiary, although the policy stated he must do so in order to be binding. The only return the law gives him for his kindness to the deceased is a claim against his estate.

The judgment must be affirmed, with costs.

FREEDMAN, P. J. (concurring). I am in favor of an affirmance of the judgment herein for the following reasons: The defendant's manager in this city, Hill, had no authority to designate a beneficiary in the policy, or to change a beneficiary therein theretofore designated. His statement, alleged to have been made to the plaintiff and the insured in the conversation in June, 1901, that "it would be all right," was insufficient to bind the company without subsequent ratification on the part of the company. This ratification is not shown. There is no evidence going to show that the premiums due on the policy and received by the defendant company after the policy had been delivered to the plaintiff were so received with knowledge that the same were paid by

the plaintiff. In the absence of such knowledge the defendant company had a right to assume that such premiums were paid by the assured. Neither is there any evidence that prior to the payment of the amount due under the policy to the administratrix of the deceased in Boston the defendant company had notice of any claim of the plaintiff thereto.

MacLEAN, J. (dissenting). It would seem that the defendant, maintaining a branch office of its business in this city, equipping its agents here with blank forms for just such an application as was made by the plaintiff, who, at the time, paid 10 weeks' premiums in advance, continued payments of premiums during the life of the assured, and incurred additional expense in his interment, should have paid or be constrained to pay the proceeds of the policy to the plaintiff as the person equitably entitled thereto.

Judgment affirmed, with costs.