She gave no one any interest in the estate put in trust but herself, and those who might be her heirs. Under the authorities bearing on the subject of such trusts, this trust ended when the grantor became discovert. Megargee v. Naglee, 64 Pa. 216; Yarnall's Appeal, 70 Pa. 335; Ogden's Appeal, Id. 501; Tucker's Appeal, 75 Pa. 354; Williams' Appeals, 83 Pa. 390. The coverture being the only purpose of the settlement, and being ended by the death of the husband, and she being sui juris, and no persons yet entitled as heirs, there is no reason to perpetuate the trust, and it should fall at her own instance. Courts of equity will relieve from a voluntary and self-imposed trust without consideration, where its purpose has been fulfilled, and there is no other reason to preserve it."

The decree revoking the trust was affirmed on appeal.

To the same effect are Rogers v. Cunningham, 51 Ga. 40; Wilkinson v. Gibson, L. R. 4 Eq. Cas. 162; Swift v. Wenman, L. R. 10, Eq. Cas. 15; and Fussell v. Dowding, L. R. 14 Eq. Cas. 421.

The marriage settlement in Borland v. Welch, 162 N. Y. 104, 56 N. E. 556, was essentially different, in that the settlor there made provision for a possible subsequent or second marriage. The court said (page 108, 162 N. Y., page 557, 56 N. E.):

"The reference to a subsequent marriage doubtless shows that the trust was not to terminate by the death of the husband prior to that of the wife."

The court fully recognized, however, that the main object of antenuptial settlements was to avoid the husband's control of the property during coverture, saying:.

"That the courts have been entirely right in the view that the dominant object of the settlement of the wife's property by antenuptial agreement was to avoid the husband's marital rights given by the common law, and to save it from the claims of his creditors, is manifest from the fact that since the enactment of the married women's statutes such settlements have become, if not obsolete, extremely rare, in this state."

In this case it seems clear that the purpose of the settlement was only to tie up the principal during the contemplated marriage, and that the intention of the parties was to terminate the trust on the death of the husband during the life of the wife; and it follows that the plaintiff is entitled to judgment as prayed for.

Judgment directed for plaintiff in accordance with the terms of the submission, without costs. All concur.

---

(45 Misc. 320)

### NEWMAN v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Term.  November 10, 1904.)

1. LIFE INSURANCE—POLICY—CHANGE OF BENEFICIARY—CONSENT OF INSURER—CONDITION PRECEDENT—STATUTE.

   In an action on a policy of life insurance for the benefit of the children of the insured, but reserving to the insured the right to change the beneficiary with the consent of and by written notice to the insurer, plaintiff claimed the right to the proceeds by virtue of a paper signed by the insured, requesting the insurer to make plaintiff the beneficiary because one of the insured's children had died. The paper and the policy were delivered to plaintiff, who placed them in his safe, and kept them until after the death of the insured. The insurer knew nothing about them until after the death of the insured, and it never assented to the

proposed change of beneficiary. The plaintiff did not pay anything for the receipt of the papers, nor thereafter pay any of the premiums. The insured paid the premiums herself, and kept the premium receipt book, which, by the terms of the contract, was required to be produced before the insurer could be required to pay the insurance. Plaintiff obtained the book after insured's death. *Held*, that plaintiff could not maintain an action on the policy, notwithstanding Laws 1892, p. 2015, c. 690, § 211, providing that the consent of the original beneficiary shall not be necessary to enable the insured to make a change of beneficiary.

2. SAME—ESTOPPEL.

The mere fact that an agent of plaintiff obtained at defendant's office blanks for the purpose of making plaintiff the beneficiary under the policy, and was told to have them filled out, does not operate as an estoppel of the defendant.

Appeal from City Court of New York, Trial Term.

Action by Jacob Newman against the John Hancock Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and FITZGERALD, JJ.

Langbein & Langbein, for appellant.
Steuer & Hoffman, for respondent.

FREEDMAN, P. J. The real controversy in this case is not between plaintiff and defendant, but between the plaintiff and the surviving children of the insured, for whose benefit the policy was taken out, and whose battle the defendant is fighting. The defendant is not a mutual benefit association. The defendant is a foreign corporation duly organized and existing as a life insurance company under the laws of the state of Massachusetts. By the two policies in question it insured the life of Eva Fell in the amounts therein stated for the benefit of her children, but the contract of insurance reserved to the insured the right to change the beneficiary, "with the consent of the company, by written notice to said company." The plaintiff claims to recover upon the policies as a subsequently designated beneficiary, and the material facts, briefly stated, were shown to be as follows: The insured signed papers requesting the defendant to make plaintiff the beneficiary under the policies because one of her children had died, and delivered said papers, with the policies, to him. The plaintiff placed them in his safe, and then kept them until after the death of the insured. They were never shown to the defendant, nor filed with or delivered to it, nor was its consent requested, before the death of the insured. The company knew nothing about them until after the death of the insured, and it never consented to the proposed change of beneficiary. The plaintiff did not pay a penny for the receipt of the papers, nor did he thereafter pay the premiums. The insured paid the premiums herself, and kept the premium receipt book. This book, by the terms of the insurance contract, was required to be produced before the company could be compelled to pay. The plaintiff did not get it until after the death of the insured, and then he got it from the daughter. There was no assignment of the policies. If there had been, the policies, by the very terms of the insurance contract, would have become void un--

less the company consented to it. Upon these facts the plaintiff could not maintain the action upon the policies against the defendant, for, as a condition precedent, he was bound to obtain the consent of the company to his substitution as the beneficiary, and this he had not done. The precise point was involved in Canavan v. The John Hancock Mutual Life Ins. Co., 39 Misc. Rep. 782, 81 N. Y. Supp. 304, in which case plaintiff's right to recover was denied, although he had paid premiums and presented a request to change, because he had failed to protect his rights by seeing that the contemplated change was approved by the company. For the reasons there stated there is no estoppel in the case at bar by reason of the fact that an agent of the plaintiff obtained at defendant's office two blanks for the purpose of making the plaintiff the beneficiary under the policies, and was told to have them filled out. Nor does the insurance law of this state (chapter 690, p. 2015, of Laws 1892, § 211) help the plaintiff, for while, for the purpose of changing the original payee or beneficiary, it is not necessary to require his consent, the consent of the corporation is made indispensably necessary. In Fink v. The D. L. & W. Mutual Aid Society of Scranton, Pa., 57 App. Div. 507, 68 N. Y. Supp. 80, the decision proceeded upon the ground that under the constitution and by-laws of said society a member had an absolute right to change his beneficiary upon a mere request and the payment of a fee of 25 cents. The respondent cited a number of other cases, but on examination I found them inapplicable. The conclusion is therefore unavoidable that the direction of a verdict was erroneous.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.