"AUTOMATIC" SPRINKLER CORPORATION OF AMERICA, APPELLANT, v. GREENSPAN BROTHERS COMPANY, A CORPORATION, RESPONDENT.

Submitted February 12, 1931—Decided October 19, 1931.

For the appellant, *Potter & Berry* (*Raymond H. Berry* and *Arthur N. Colton,* on the brief).

For the respondent, *John E. Toolan.*

The opinion of the court was delivered by

CASE, J. Plaintiff seeks damages for the alleged breach by the defendant of a contract whereunder the plaintiff was obligated to, and did, install a chemical fire sprinkler system, and defendant was obligated to pay a yearly rental of $885 for a period of ten years. Defendant, conceiving that the system did not accomplish the purpose for which it was installed, and that there was no obligation upon it to make payment therefor, had the same removed and denied liability. The trial judge, sitting, by consent,. without a jury, found for the defendant. Plaintiff appeals.

The contract, on a printed form prepared by the plaintiff, required the defendant to make its first payment "upon the licensing of the equipment by licensor, or upon the date when subscriber first becomes entitled to insurance rate credit by reason of said service," and to make additional payments at yearly intervals thereafter. The significance of the term "insurance rate credit" is disclosed by the evidence. It is undisputed that the only purpose of defendant in making the arrangement, and the insistent representation by plaintiff in obtaining the execution of the contract, was that the defendant should and would thereby be enabled to secure a fifty per centum saving in its insurance rates. After the sprinkler system had been installed the defendant was able to secure such a reduction through, and only through, an insurance scheme known as the "reciprocals." The case nowhere precisely defines what the "reciprocals" are, but it is in the evidence that those who conduct the business are not incorporated and are not bound together in an association. It is admitted that such insurers may not legally do business in this state and that there is no law under which they may be licensed to do business herein.

The evidence further discloses that the Sypho Chemical Sprinkler Corporation, which is designated in the contract as the licensor whose licensing of the equipment constitutes one of the alternative requirements for payment, is in fact a subsidary of the plaintiff and that one Reiley, employed by the plaintiff as chief inspector, is also the chief in-

spector of Sypho Chemical Sprinkler Corporation. He receives his salary from the former under an arrangement whereby, on the books, an appropriate cross entry item is charged against the latter. As the employe of the plaintiff he supervises the installation of the apparatus, whereupon as the representative of the subsidiary he directs the issuing of the license. It was, according to the testimony of plaintiff's agent who negotiated the contract, represented to defendant that payment would become due when credit reduction was had on the insurance.

While the contract is not entirely clear, our interpretation from the wording thereof is that the defendant might choose which of the two events should fix its liability to begin rental payments. The substantial merging of the operations of the subsidiary into those of the plaintiff, the general factual situation (*Ryer* v. *Turkel*, 75 *N. J. L.* 677, 685), and the application of the legal principle that a written instrument is construed most strongly against him who draws it (*Empire Rubber Manufacturing Co.* v. *Morris*, 73 *Id.* 602, 610; *American Lithographic Co.* v. *Commercial Insurance Co.*, 81 *Id.* 271), serve to confirm our conclusion that it lay with the defendant to elect which of the two alternatives—namely, the licensing of the equipment or the procuring of a reduced insurance rate by reason of the service—should be the condition precedent to an obligation upon it to pay. We believe that that was the intent of the parties. The defendant elected the provision having to do with the insurance rate credits.

The defendant's obligation, then, was to begin its installment payments when and if it became entitled to an insurance rate credit by reason of the installed service. It was placed in position to procure a rate reduction from insurers who were not, are not and, while the law remains as it is, cannot become competent to do business in this state. This disability is neither casual nor incidental; it is a part of the settled public policy of the state fixed by statutes of long standing, enacted by the legislature as a protection for those

who have occasion to purchase fire insurance. *State* v. *New Jersey Indemnity Co.*, 95 *N. J. L.* 308, 314. Also see "An act to provide for the regulation and incorporation of insurance companies and to regulate the transaction of insurance business in this state." 2 *Comp. Stat.*, *p.* 2838, *inter alia*, sections 1, 6, 8, 16, 58, 59 and particularly sections 88 and 89.

The appellant's argument is in part that while the procurable insurance is not to be legally effected in this state, it may be so effected in an adjoining state and that, thus obtained, it may be, in the event of fire loss, enforced by action at law in this state under the rule of comity. This suggestion ignores the very likely contingency that there may be no entity and no fund within this state to be reached by process. Once concede that the defendant is, by its contract, compelled to go into a foreign jurisdiction for that which cannot be legally had here, there appears no frontier to the region which it may be compelled to explore for cheaper insurance, no limit to the distance which it may be called upon to travel in order to collect upon a fire loss, no fixed financial resources on the part of the insurer whose policy it may be obliged to accept. There being nothing in the' contract to the contrary, we consider that the defendant was not, within the purview of the payment clause, entitled to an insurance rate credit unless it should become entitled to that credit on insurance lawfully procurable within this state. The defendant had the right to assume that any act or credit chargeable to it under plaintiff's contract would be legal within this jurisdiction where the contract was made and where, also, it was to be performed.

Of the four points presented on appellant's brief, points one and two are on the refusal of the trial court to direct a verdict for the plaintiff. For the reasons given above we think the refusal was proper. Under our view of the case points three and four present no matter that need be specially adverted to.

The judgment below will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.