In the Matter of the Estate of EDWARD F. O'NEILL, Deceased.
Surrogate's Court, Kings County, March 11, 1932

*Winifred Sullivan*, for the petitioner.

*Maloney & Doyle*, for Elizabeth Euler and Margaret M. Mullin.

*Colon Weit*, for Prudential Insurance Company of America.

WINGATE, S. The controversy in this discovery proceeding concerns the relative rights of the parties in the proceeds of certain policies of insurance upon the life of the decedent.

The decedent's mother was apparently a great believer in life insurance, and secured upwards of a dozen policies in industrial form upon the lives of her husband and seven children. The first policy on the life of this decedent was dated April 23, 1900, at which time he was approximately one year old. This was

followed by another in the succeeding year, and a third when he was nine years of age. Up to the time of her death the mother paid all the premiums. She died on May 24, 1914, shortly prior to which time she delivered all of the family policies, including those on the life of this decedent, to the eldest daughter, Margaret Mullin, directing her to continue the payments thereon.

About a month subsequent to her death additional industrial policies were taken out on decedent's life and on that of another brother " to make up for the amount * * * that had been paid on my mother " (S. M. p. 60), and these were followed by a fifth on the life of decedent when he was eighteen years old.

On April 5, 1921, a twenty-year endowment policy was written on decedent's life, with the proceeds payable to this eldest sister as named beneficiary.

At the time of decedent's marriage to the petitioner the policies on his life were turned over to him and a change of beneficiary, to his wife, was effected, under the endowment policy.

Decedent and his wife lived together for somewhat over a year when they separated. During this period the premiums on the policies were paid by the petitioner from moneys given her by the decedent. Some time after the separation decedent secured these policies from her and paid her the sum of fifty-five dollars, which was apparently the aggregate of the amounts expended by her up to that time for the continuance of the policies. The decedent then again turned the policies over to his sister, who paid the premiums thereon. Whether this was done from her own funds or from funds furnished by the decedent for the purpose, has not been established to the satisfaction of the court, but since he furnished money for this purpose to his wife while they lived together, and admittedly paid moneys for some purpose to the respondent during the period of the separation, an inference arises that he furnished the moneys, or at least the major portion thereof, for their continuance. Simultaneously with the separation, the beneficiary under the endowment policy was changed from the wife of the deceased to Margaret Mullin and Elizabeth Euler, two of his sisters.

Decedent and his wife became reconciled in the fall of 1930. Up to this point there is no serious conflict between the testimony of the opposing parties, but in respect to the transactions which later occurred their statements are irreconcilable.

According to the testimony on behalf of the petitioner, the decedent requested a return of the policies by the respondent, who stated that she had just moved and could not find them, but would turn them over to him as soon as her effects were unpacked. This

is denied by the respondent, but it is unquestionable that she did deliver to him certain books and receipts appertaining to certain of them.

Petitioner also testified that the decedent paid the respondent certain sums by way of reimbursement for premiums which the latter had advanced during the separation period. This, also, is denied.

The issue, therefore, resolves itself wholly into one of the credibility of the opposing witnesses, and on this the court must decide in favor of the petitioner, both in consequence of her apparently greater truthfulness and because of the fact that her testimony was corroborated in most material respects by the evidence of Mrs. Badenhauser, who was the only witness introduced who was not connected with either side of the controversy by blood or marriage and who possessed no conceivable personal interest in the issues. The court is, therefore, satisfied that the petitioner has sustained the burden of proof and determines that the decedent not only demanded these policies from the respondent, but received her promise to turn them over as testified by the petitioner; also that he reimbursed her for premiums which she had paid thereon during the period during which he and his wife were living apart.

It is undisputed that in or about December, 1930, decedent called at a branch office of the insurance company for the purpose of attempting to change the beneficiary in the endowment policy, but was then informed that this could not be done without production of the policy. Upon informing a clerk of the company of his inability to produce the policy, the latter advised him to make a will disposing of its proceeds. He attempted to do this, but the document prepared by a notary consulted for the purpose was ineffectual and the company made payment of the principal sum of the endowment policy to the respondents as the beneficiaries named therein. The company, however, declined to pay to decedent's sister the amounts called for by the industrial policies, although demand was made therefor, and has, in effect, interpleaded the claims of petitioner and respondents in respect thereto, holding the moneys for the benefit of those in whose favor this court shall decide.

The industrial policies are payable to the executors, administrators or assigns of the deceased and contain a facility of payment clause in the usual form, permitting payment at the option of the company to any relative by blood or connection by marriage of the insured or to any other person appearing to the company to be equitably entitled by reason of having incurred expense in any way on behalf of the insured for his burial or for any other

purpose.  The insurance company, however, has refused to avail itself of this provision.

The decedent left no property whatsoever, aside from any sums which may be due it on these policies, and the petitioner is the administratrix of his estate.  The decedent died intestate, and the statutory distributees of his estate are the widow and a posthumous child.  The bill for the funeral, which was ordered by the petitioner, amounting to $750, remains unpaid.

Certain testimony was adduced on behalf of the respondent, relating to conversations had with a collector for the insurance company to the effect that it was his understanding that a person possessing an industrial policy and paying the premiums would receive the proceeds of the policy upon the death of the insured.  This statement was, however, made between 1921 and 1925, at a time subsequent to the writing of all of the policies here in question.

The only additional fact which appears worthy of note to be gleaned from the testimony is that the policy taken out at the time the decedent was nine years old matured and was paid to him personally on October 9, 1929.

In view of the frequency with which questions of this nature are presented to this court, it may not be inappropriate to review some of the adjudications pertinent to the subject.

A policy of insurance is merely a simple contract whereby the insurer in return for certain periodic payments to be made to it, engages, upon the happening of a designated event, to pay a named sum either to a specified individual or to a person falling within a certain description.  In life insurance, the conditional event is either the death of the insured, or his attainment of a specified age.  The obligations of the insurer are merely the agreements expressly stated in its contract, which is termed the policy.  When, therefore, its obligations under the instrument are brought in issue, they are, in the usual case, determinable solely thereby.  On the other hand the simple contract obligations of the insurer have no necessary bearing upon the possible rights of third parties to shares in the principal sum which it is under obligation to pay by reason of the terms of the policy.  Here equitable, and sometimes legal, rights may be superimposed on the recovery, as a result of which persons other than those to whom the company is primarily liable may become entitled to a share in the fund derived from the sum due from the insurer.  This distinction, which is one of fact, is pointed out with especial clearness in the opinion of Mr. Justice MARTIN in *White* v. *White* (194 N. Y. Supp. 114, at pp. 120 and 121, not officially reported), and if borne in mind will resolve many of the apparent inconsistencies in the adjudicated cases.

Policies of straight life, as distinguished from endowment insurance, may be grouped roughly into two classes. The older and simpler form comprises those in which the payee, upon the death of the insured, is specified nominatim. In such cases, barring the comparatively rare instances of assignments or equitable considerations which will be noted later, the sole enforcible duty of the insurer is to pay the named individual upon the death of the insured. The exact terms of the contract govern. (*Hopkins* v. *Conn. Gen. Life Ins. Co.*, 225 N. Y. 76, 83; *Schoenholz* v. *N. Y. Life Ins. Co.*, 234 id. 24; *Strianese* v. *Metropolitan Life Insurance Co.*, 221 App. Div. 81; *Canavan* v. *John Hancock Mutual Life Ins. Co.*, 39 Misc. 782.)

In recent years a new form of insurance, known as the " industrial " policy, has come into vogue. These contracts are usually written for small sums and carry weekly premiums of a few cents. As noted by the Appellate Division for the Fourth Department in *Zornow* v. *Prudential Insurance Co.* (210 App. Div. 339, at p. 341): " The fundamental purpose of such small policies as these is to provide a fund with which the insured may procure care in his last sickness, and be assured of a respectable burial."

As conducive to these objects, the contracts, in addition to providing for the payment of the principal sum either to a named beneficiary or to the executor or administrator of the insured, almost invariably contain what is known as a " facility of payment " clause, permitting the insurer to pay the contract figure to any relative by blood or connection by marriage of the insured, or to any other person appearing to the company to be equitably entitled by reason of having incurred expense in any way on behalf of the insured for his burial or for any other purpose.

The designation popularly given this clause aptly describes the legal results which have been attached to it. As is said in *Ferretti* v. *Prudential Insurance Co.* (49 Misc. 489, at p. 490): " The provision for the payment to persons other than the executors, administrators or assigns, being wholly optional with the company, creates no legal liability on the part of the company toward those others, and merely provides a defense to the company against the claims of the executors, administrators and assigns, if, but not unless, it has elected to make payment to the other persons named."

In accordance with this principle, it has been held with great uniformity that if the company has failed or refused to exercise its right of election thus given, the only persons who can recover from it are those expressly described in the policy either by name or in a representative capacity. (*Matter of Howley*, 133 Misc. 34;

*Nolan* v. *Prudential Insurance Co.*, 139 App. Div. 166; *Matter of Degenhardt*, 123 Misc. 762; *Wachtel* v. *Harrison*, 84 id. 76; *Ruoff* v. *John Hancock Life Ins. Co.*, 86 App. Div. 447; *Zornow* v. *Prudential Insurance Co.*, 210 id. 339; *McCarthy* v. *Prudential Ins. Co.*, 252 N. Y. 459.)   In the last cited case an especially clear exposition of the entire matter is given by Judge Crane, which reads in part as follows (at p. 463): " The claim belonged to the executor or administrator.   The company agrees to pay to the executors or administrators of the insured *unless* payment be made under the ' Facility of Payment ' clause.   The claim belonged to the estate.   It was a contingent claim, however, subject to the right or privilege of the company to pay any relative.   The privilege, however, belonged to the company and was not a right of a relative."   (Italics in original.)

Whereas the insurer cannot be compelled to exercise its option in favor of any individual within the description of the facility clause, it will not be permitted to employ its privilege for its personal advantage to escape payment of the entire principal to some one who is within the description of the policy as a whole, and if it does not pay to an individual within the optional class it must pay to the payee expressly named or to the estate of the deceased. (*Wokal* v. *Belsky*, 53 App. Div. 167; *McCarthy* v. *Prudential Ins. Co.*, 252 N. Y. 459.)

If the payment be fairly made under the facility clause, it will furnish a complete defense against a subsequent action for the principal sum, no matter by whom initiated (*Thompson* v. *Prudential Insurance Co.*, 119 App. Div. 666; *Cohen* v. *John Hancock Mut. Life Ins. Co.*, 135 id. 776), but  " *   *   *  in thus permitting the insurer in a sense to elect to whom it shall pay on the policy, the courts will require not only good faith on the part of the insurer, but the exercise of sound judgment in making payment to the proper claimant in order that no great injustice shall be done to the estate of the decedent and to those having legitimate claims.   *   *   * In determining who is the person ' equitably entitled ' to receive payment, the insurer must be governed in making its choice by equitable principles approximating at least those recognized by the courts."   (*Zornow* v. *Prudential Insurance Co.*, 210 App. Div. 339, 342.)

This principle of requiring equitable dealing on the part of the insurer is further illustrated in the cases which have held that where the writing of the insurance in the first instance is induced by a representation of an employee of the company, acting within the apparent scope of his authority, to the effect that the company would exercise its option in favor of a blood relative or connection by marriage, who secured the insurance and paid the premiums

thereon, the courts would enforce the agreement. (*Shea* v. *United States Industrial Ins. Co.*, 23 App. Div. 53; *Tarasowski* v. *Prudential Insurance Co.*, 113 Misc. 248; *Matter of Dickman*, 142 id. 207.) While, judged on principles of the law of agency, these cases may be deemed to go rather close to the border line of correct decision, the facts of all three appear well within the instructions of the court approved in *Powers* v. *Prudential Ins. Co.* (83 Hun, 254, at p. 256; unanimously affd., 145 N. Y. 654).

In policies in which an individual beneficiary is named, he is, in the absence of an assignment thereof, obviously the only person possessing enforcible rights against the insurer, and to effect a legal change there must be exact compliance with the terms of the policy. (*Strianese* v. *Metropolitan Life Insurance Co.*, 221 App. Div. 81; *Canavan* v. *John Hancock Mutual Life Insurance Co.*, 39 Misc. 782.)

In the last analysis, however, a policy of life insurance is merely a chose in action, and thus is assignable and enforcible against the company by an assignee like any other right within this classification, even by parol transfer. (*Marcus* v. *St. Louis Mut. Ins. Co.*, 68 N. Y. 625; *Olmsted* v. *Keyes*, 85 id. 593; *Griffin* v. *Prudential Ins. Co.*, 43 App. Div. 499; *McNevins* v. *Prudential Insurance Co.*, 57 Misc. 608; *Tepper* v. *New York Life Insurance Co.*, 89 id. 224; *Foryciarz* v. *Prudential Insurance Co.*, 95 id. 306; *Matter of Lynch*, 135 id. 436; *Matter of Mackintosh*, 140 id. 12.)

Since the obligations of the insurer are, strictly speaking, only legal and contractual, it might be thought that a different result would be reached where the policy contained an express provision that it should be absolutely or conditionally void in case it was assigned. In this respect, however, the effect of the consolidation of equitable and legal powers in the courts of this State becomes evident. A declaration of invalidity would, in effect, work forfeiture, and as equity disapproves of such a proceeding with the same intensity that nature abhors a vacuum, the courts have indicated their readiness to go to considerable lengths in applying the principles of estoppel and waiver in avoiding any such result. As is said in *Holleran* v. *Prudential Insurance Co.* (172 App. Div. 634, at p. 640): " Very little is required to waive a forfeiture under a life insurance contract after the capital fact of the death of the insured. Any act of the insurer after knowledge of the facts which treats the contract as still in force is usually held by the courts to constitute a waiver of forfeiture."

Turning now to cases in which the insurer is not a party litigant, and the sole question relates to the distribution of the fund among those who assert claims against it, it is found that legal principles

largely vanish and equitable considerations are given almost undisputed sway. As is said by Mr. Justice MARTIN (*White* v. *White*, 194 N. Y. Supp. 114, 121, not officially reported): "A far more liberal rule obtains in cases of this character in an equity court, where it is sought to do that which the insured apparently intended to have done, and to award the fund to that claimant who had the strongest claim therefor under the proof."

Equity requires diligence. Therefore, where the insured failed to do all which might reasonably have been possible to effectuate his wishes, as to change a named beneficiary, aid will be denied. (*Schoenholz* v. *New York Life Ins. Co.*, 234 N. Y. 24; *Fink* v. *Fink*, 171 id. 616.) Where, however, a substantial compliance with requirements has been made or the insured has done all within his power, the courts will effectuate his wishes. (*Luhrs* v. *Luhrs*, 123 N. Y. 367, 372; *Schoenholz* v. *New York Life Ins. Co.*, 234 id. 24, 29.)

On primary principles, no one will be permitted to profit by a wrongful or fraudulent act. Therefore, a named beneficiary who improperly prevents an insured from making a change in the payee of the policy will not be permitted to retain the avails (*Lahey* v. *Lahey*, 174 N. Y. 146), and, conversely, the estate of an insured who committed a fraudulent act in order to effect a change cannot prevail against the person thus defrauded. (*Tepper* v. *New York Life Insurance Co.*, 89 Misc. 224.) The primary maxim that he who demands equity must himself do it has, in essence, received frequent application in the results of the courts on such questions, and whereas the tendency of the decisions has been to award the principal sum to that person who has incurred expense in connection with decedent or his estate, this is usually accompanied by the impressing of an equitable lien upon the proceeds of the policy to the extent of premiums paid by an adverse claimant. (*Morgan* v. *Mutual Benefit Life Insurance Co.*, 132 App. Div. 455; *Nolan* v. *Prudential Insurance Co.*, 139 id. 166; *Grabowski* v. *Lotko*, 135 Misc. 747.) (See, also, *Matter of Schiffer*, [FOLEY, S.], Id. 830.)

The application of these principles to the case at bar will be obvious. The insurance company, by reason of its interpleader in respect to the industrial policies and its legitimate payment to the named beneficiaries under the endowment policy, is not an interested party to this proceeding and was, on the hearing, formally discharged from the record. The controversy lies wholly between the administratrix of the deceased and the respondents.

It seems entirely apparent from the record that the purpose with which the industrial policies were first taken out was in this case that noted by the Appellate Division in *Zornow* v. *Prudential Insurance Co.* (*supra*), in the quotation above given, to defray

the expenses of this decedent's last illness and burial. This is emphasized by the delivery of the policies to him on his marriage. That their subsequent temporary return by him to the respondent Mullin was obviously merely for the purpose of custody is demonstrated by his request for their redelivery after the reconciliation with his wife. Their proceeds will be substantially exhausted by the payment of the bill for decedent's funeral. The apparent willingness of the respondent Mullin to permit her brother's body to be interred in Potter's field, rather than surrender any part of the avails of this insurance on his life, is not an attitude which appeals to a court of equity. She has wholly failed in sustaining the burden of proof which rested upon her of demonstrating that an assignment of the policies was made to her. Their avails must, therefore, be paid to the administratrix. The respondent has also failed to show that any sums were paid by her for premiums on these policies which were not repaid, wherefore no equitable lien can be impressed in her favor on the proceeds in this regard.

So far as concerns the endowment policy, the decedent had an absolute right to change the beneficiary therein at any time prior to his death. The exercise of this right was prevented by the failure of respondent to surrender the policy to him at his request. Respondents will not be permitted in equity to profit as a result of this wrong. The decision on this phase of the case must follow that of the Court of Appeals in *Lahey* v. *Lahey* (174 N. Y. 146), which it strikingly resembles.

The court determines that the decedent, who was a stevedore, did all which could reasonably have been expected from him under the circumstances to effect a change of beneficiary.

The sums payable on the industrial policies will, therefore, be paid to the petitioner and the respondents will be directed to pay over to her all sums received by them on the endowment policy.

Costs and disbursements of this proceeding are awarded against the respondents.

Proceed accordingly.