The petitioner was engaged in the glazing business in the city of Bayonne, county of Hudson, and State of New Jersey, from about the year 1911 up to the filing of the petition herein. In the year 1933, he entered into contracts with his customers in the said city whereby, for a sum of money, he agreed with and obligated himself to them, for a certain period, "to service the glass store front in the premises of said customers, which service consisted of (1) repairing store front glass by tightening bars or clamps to keep the glass in firm condition, and (2) to replace all store front glass broken in the said premises." The petition says that the business of "service contracts is limited solely to properties located in the city of Bayonne and only to such persons as are specially chosen by the petitioner."
The defendant the prosecutor of the county of Hudson says that the complainant's "service" business is one of insurance and is being conducted in violation of the provisions of the Insurance laws of the State of New Jersey. He, in consequence, submitted the facts to the grand jury of Hudson county for its consideration, and the petitioner was indicted by that body at the December term, 1934, for an alleged violation of the provisions of the Insurance act. The indictment is based upon the statute entitled "An act to provide for the regulation and incorporation of insurance companies and to regulate the transaction of insurance business in this state." P.L. 1902p. 407, as amended and supplemented. Section 88 of said act was amended by P.L. 1928 p. 396, and it now provides that:
"No person or firm nor any company organized under the laws of this State or of any other State or foreign country, himself, itself or themselves, or by his, its or their brokers, agents, solicitors, surveyors, canvassers or other representatives of whatever designation, nor any such broker, agent, solicitor, surveyor, canvasser or other representative, shall solicit, negotiate or effect any contract of insurance of any kind, including all kinds of insurance described in this act, or sign, deliver or transmit, by mail or otherwise, any policy, certificate of membership or certificate of renewal thereof, or receive any premium, commission, fee or other payment thereon, on any property or thing, or on the life, health or safety of any person, or maintain or *Page 536 
operate any office in this State for the transaction of the business of insurance, or in any manner, directly or indirectly, transact the business of insurance of any kind whatsoever, within this State, unless such company, person or firm, shall be authorized to do the same under the provisions of the laws of this State. Any person, firm or company violating any of the provisions of this section shall be guilty of a misdemeanor."
Section 89 of said act provides (P.L. 1902 p. 446):
"The penalty for each violation of this act, except any failure of any company to file an annual statement, shall be five hundred dollars and all costs of suit; all penalties provided by this act shall be sued for and collected by the commissioner of banking and insurance in an action upon contract in the nature of an action for debt in the name of the state; the first process against any person may be a capias ad respondendum, and any person against whom any judgment shall be obtained shall be committed to the county jail until such penalty and costs are paid; one-half of such penalty, when recovered, shall be paid by the commissioner of banking and insurance to the local firemen's relief association in the city, town or township wherein the violation was committed, if there be such an association therein, and if not, then to be paid in equal shares to the several firemen's relief associations in the county wherein the violation occurred; and, if none exist in the county then to be paid to the said commissioner, to be distributed by him pro rata to each of the firemen's relief associations in the state, as other funds are by law distributed by him to such associations, and the other half to the said commissioner for the use of the state; and the necessary expenses for enforcing the provisions of this act, when not otherwise provided for, shall be paid by said commissioner out of the fines so collected and the fees and taxes paid by insurance companies of other states and foreign countries."
The commissioner of banking and insurance, the petition alleges, has threatened to institute proceedings against the petitioner under this last mentioned section (89) for the recovery of penalties therein mentioned because of his execution of all such service contracts.
The petitioner contends he is within his rights to enter into the related contract and argues that the quoted sections 88 and 89 of the Insurance act, as far as they purport to prohibit or forbid an individual from transacting the business of insurance and to provide penalties for the transacting thereof, are unconstitutional and void; and, he alleges that the proposed trial of the indictment by the prosecutor of the pleas of Hudson county will result in irreparable injury to *Page 537 
him and to his business. Upon the filing of the petition herein, an order to show cause was issued to (1) enjoin the prosecution of criminal proceedings under section 88 of the Insurance act, and of the civil proceedings by the commissioner of banking and insurance for recovery of the penalties provided in section 89 of said act for violation of the provisions of section 88 thereof; and (2) for a declaratory judgment to determine (a) the constitutionality of the Insurance act so far as the same attempts to prohibit individuals from carrying on the insurance business, and (b) for a construction of the Insurance act to determine whether the business of the petitioner is actually within the meaning of the act.
At the time of the argument on the order to show cause, it was stipulated by counsel that the instant case was to be considered and decided by the court upon the verified petition filed herein and the briefs then filed, and to be filed, by the petitioner and both defendants.
It is contended that the right to earn a living is a property right. That point has been affirmatively decided by our courts. It has been most recently settled in an opinion of the court of errors and appeals in the case of Cameron v. InternationalAlliance T.S.E., 118 N.J. Eq. 11; 176 Atl. Rep. 692. The petitioner is unquestionably vested with this property right. That it applies to the issue, there is no doubt in my mind. The petitioner charges that the statute under which he was indicted is invalid, and because of such invalidity, he is not barred from engaging in the insurance business; and that when the state interferes with his right to so engage, it interferes with his vested property right to earn a living. There is force to his argument. If the statute cannot be sustained, then the state's action in prosecuting under it cannot be sustained. The defendants question the jurisdiction of this court and say the petitioner, under the facts, is not in the proper forum. I disagree with them. The complainant comes to the right tribunal. Vice-Chancellor Church in Brex v. Smith, 104 N.J. Eq. 386;146 Atl. Rep. 34, in discussing the right of a court of equity to enjoin a public official from proceeding with a criminal action, said: *Page 538 
"The prosecutor contends that a court of equity has no jurisdiction, because it cannot enjoin a public official, stating that this court cannot stay or interfere with a criminal proceeding. In the first place, this statement is too broad, for the courts have held that under certain circumstances this may be done in criminal cases. In Ex Parte Young, 209 U.S. 123;28 S.Ct. 441; 52 L.Ed. 715; 13 L.R.A. (N.S.) 932;14 Ann. Cas. 764 (to cite but one), the United States supreme court said, after citing numerous cases: `These cases show that a court of equity is not always precluded from granting an injunction to stay proceedings in criminal cases.' * * *
"In Royal Baking Powder Co. v. Emerson (C.C.A., 8thCir.), 270 Fed. Rep. 429, a suit was brought in equity to enjoin the prosecutor of the pleas from proceeding against the Royal Baking Powder Company for violation of a state statute. The circuit court of appeals said (at p. 432):
"`It is true that the general rule is that courts of equity will not enjoin criminal prosecutions. The exception is that where property rights are involved, and it is claimed seriously and in good faith that the act of the prosecutor is not authorized by law, equity can act. * * * Truax v. Raich,239 U.S. 33, 37; 36 Sup. Ct. 7; 60 L.Ed. 131; L.R.A. 1916D 545, * * *. This lack of legal authority may arise because the act is within an invalid statute, or because it is not authorized by a valid statute. In either case the act is without legal sanction, is not protected by the official status of the prosecutor, and can be restrained. The complaint alleges a multiplicity of threatened prosecutions, and irreparable injury thereby through destruction of a valuable good will in an established trade brand; that such prosecutions are arbitrary, capricious, and unreasonable, and therefore not within nor authorized by the statutes, but violative of appellant's rights, under amendment 14, section 8 of article 1, and article 6 of the national constitution. These contentions are apparently urged seriously and in good faith. They support the jurisdiction of the court.'"
The vice-chancellor cited these cases to support his point: ExParte Young, 209 U.S. 123; Truax v. Raich, 239 U.S. *Page 539 33. To these may be added David and Farnum Manufacturing Co.
v. Los Angeles, 189 U.S. 207; Tyson and Brother, c., v.Banton, 273 U.S. 418; Dobbins v. Los Angeles, 195 U.S. 233;Philadelphia Co. v. Stimson, 223 U.S. 604; Panama Refining Co.
v. Ryan, 79 L.Ed. 223; 14 R.C.L. 434 § 136; Thompson v. Smith,154 S.E. Rep. (Va.) 579; Chaires v. Atlantic, 164 Ga. 755;Clarke v. Harford Agricultural, c., Association, 118 Md. 608;85 Atl. Rep. 503.
Other New Jersey cases supporting the view of the cited cases are Bayonne v. Borough of North Arlington, 77 N.J. Eq. 166;75 Atl. Rep. 558, and Drive-To Department Stores v. Newark,115 N.J. Eq. 222; 170 Atl. Rep. 29. In the last two cases this court held that an injunction may always go to restrain an illegal and excessive use of authority. So much for the power of a court of equity to restrain a criminal proceeding. It was, under the circumstances, properly invoked in the instant case.
The right of an individual to conduct an insurance business has been considered by the supreme court of this state in an opinion filed by it in the case of Schenck v. State, 60 N.J. Law 381;37 Atl. Rep. 724. The Schenck Case held, among other things, that the General Insurance act (Revision of 1875), was unconstitutional because the object of the act was not stated in its title. Mr. Justice Garrison, in that case, speaking for the court, inter alia, said (at p. 382):
"* * * if there exist no valid legislative authority for the action he" (i.e., the commissioner of insurance) "has brought, no other question should be considered. In my opinion there is no valid authority for inflicting upon the agent of an individual insurer the penalty provided by the several acts of the legislature upon which sole reliance is placed.
 * * * * * * *
"The Revision of 1875 * * * enacted a General Insurance law, the title of which is `An act to provide for the regulation and incorporation of insurance companies.' Rev. page 507.
 * * * * * * *
"It will be observed that from the earliest period of this *Page 540 
statutory history down to the present time, the legislative will has always been expressed under a title that included companies, associations and corporations, but never individuals, the existing title being in this respect the least flexible of them all.
"The canon of constitutional limitation, applicable to this state of legislation, is illustrated in the opinion delivered in the court of errors and appeals in the case of Hendrickson v.Fries, 45 N.J. Law 555.
"`Under the provisions of our constitution,' said Mr. Justice Depue, `the title of a statute is not only an indication of the legislative intent, but is also a limitation upon the enacting part of the law. It can have no effect with respect to any object that is not expressed in the title.' This necessarily disposes of the writ of error now before us, for the regulation of thebusiness of an individual insurer is an object that is in no wiseexpressed by the words `regulation and incorporation of insurancecompanies.'" (Italics mine.)
The section of the act which prohibits individuals from carrying on insurance business is contained in the amendment to the supplement of the said revision (P.L. 1889 p. 174) which reads as follows:
"That it shall be unlawful for any company, corporation or association of any kind whatsoever, incorporated or organized under the laws of this state, or of any other state or nation, itself, or by its agents, solicitors, surveyors, canvassers or other representatives of whatever designation, or for any such agent, solicitor, surveyor, canvasser or other representative, or any individual or firm, whether on behalf of any such company, corporation or association or not, to solicit or negotiate any contract of insurance of any kind, or sign, deliver or transmit, by mail or otherwise, any policy, certificate of membership or certificate of renewal thereof, or receive any premium, commission, fee or other payment thereon, on any property or thing, or on the life, health or safety of any person, or in any manner, directly or indirectly, to transact the business of insurance of any kind whatsoever, within this state, unless such company, corporation or association, individual or firm, shall be authorized to transact business in this state under the provisions of the act to which this is a supplement, and the supplements thereto."
The Revision of 1875, and its amendments and supplements, was replaced by a new enactment in 1902. P.L. 1902 *Page 541 ch. 134 pp. 407 et seq. That enactment is entitled "An act to provide for the regulation and incorporation of insurance companies and to regulate the transaction of insurance business in this state." The pertinent provisions of this act are sections 88 and 89, quoted above. It will be noted that the title of the act of 1902, and all the sections of that act, refer solely to the incorporation of and the conduct of insurance by insurance corporations. The only section thereof which refers to insurance business by individuals is section 88. Section 88 of the present act of 1902 was considered by the supreme court in Solomon v.New Jersey Indemnity Co., 94 N.J.L. 318; 110 Atl. Rep. 813. The opinion of the court was announced by Mr. Justice Swayze, who had been the counsel for the defendant in the case of Schenck v.State, supra. In the Solomon Case, Mr. Justice Swayze, speaking for the court, said:
"* * * The charter of the New Jersey Indemnity Company, if it had a charter and was a corporation, is not produced, and, for all the evidence shows, the words may be only a trade name for individuals, or an unincorporated association. In either case the Insurance act does not forbid individuals from transacting the business of insurance. Schenck v. State, 60 N.J.L. 381.
Although the title of the act has been changed since the decision in Schenck v. State, we do not find that any change in the actitself prohibits individuals from making insurance contracts." (Italics mine.)
The court of errors and appeals in passing upon the appeal taken from the decision of the supreme court said it affirmed the judgment "for the reasons expressed in the opinion delivered by Mr. Justice Swayze in the supreme court." 95 N.J. Law 545;113 Atl. Rep. 927.
While the Insurance act of 1902 has been, in some respects, changed by amendments and supplements, the title of the act has not been changed. The amendments or supplements to the body of the act do not prohibit individuals from making contracts of insurance. The amendments and supplements appear to relate exclusively to the conduct of insurance business by corporations. In 1928, section 88 of the Insurance *Page 542 
act of 1902 was amended (P.L. 1928 ch. 221 p. 396) to the extent of making it a misdemeanor for a violation of the provisions of that section, as quoted above.
Again, while the legislature amended section 88, as last aforesaid, it did not undertake to amend the title of the act, notwithstanding the decision in the case of Solomon v. NewJersey Indemnity Co., supra. This want of action on the part of the legislature suggests the inference, allowable under the rules of statutory construction, that the legislature's intent was to approve and adopt the courts' determination as to the implications arising from the provisions, or want of them, in the said act. Schweinler v. Thayer-Martin, 117 N.J. Eq. 67;175 Atl. Rep. 71; Loudon v. Loudon, 114 N.J. Eq. 242;168 Atl. Rep. 840. Legislative inaction, under the circumstances, should justify the conclusion that the existing situation is in accord with the legislative purpose.
The supreme court of the United States in the case of UnitedStates of America v. Farrar, 74 L.Ed. 1078, decided that the fact that a certain construction had been placed by the courts upon legislation, and the legislature with knowledge of the courts' action, took no steps to amend the legislation is evidence of the correctness of such construction. The rule is set forth in 59 C.J. 1036 § 613, in these words:
"* * * When a statute has been construed by the highest court having jurisdiction to pass on it, such construction is as much a part of the statute as if plainly written into it originally, * * *.
"A construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. So the re-enactment of a statute after it has been construed by the courts, amounts to a legislative adoption of such construction."
The question of a private individual to engage in the insurance business under the New Jersey Insurance act of 1902 is discussed in 1 Couch's Encyclopedia of Insurance Law 508 § 242 L, in which the following appears:
"In New Jersey, unincorporated companies or associations may insure as individuals. And the present New Jersey Insurance act *Page 543 
does not prohibit individuals from transactiong the business of insurance." Citing Solomon v. New Jersey Indemnity Co.,94 N.J. Law 318; affirmed, on opinion below, in 95 N.J. Law 545.
In 1 Cooley's Briefs on Insurance (2d ed.) 64, the author says:
"In the last case (citing Solomon v. New Jersey IndemnityCo., 94 N.J. Law 318; affirmed in 95 N.J. Law 545) it was held that the Insurance act does not prohibit individuals from transacting the business of insurance."
The defendants cite the case of Automatic Sprinkler Corp.,c., v. Greenspan Bros. Co., 108 N.J. Law 115;156 Atl. Rep. 425, as supporting their position. The Sprinkler decision does not state whether sections 88 or 89 are unconstitutional by reason of defective title. The point was not raised in that case. The issue there in dispute was whether section 88 of the Insurance act prohibited individuals from carrying on insurance business. The parties to the suit conceded that "such insurers
may not legally do business in this state." The constitutionality of the act was not an issue and, consequently, the question was not considered by the court. Bodnar v. Board of Health,Carteret, 14 N.J. Mis. R. 318; 184 Atl. Rep. 682; City Bank ofBayonne v. O'Mara, 88 N.J. Law 499; 97 Atl. Rep. 149.
It is urged by the petitioner that under the provisions of the Declaratory Judgments act equity has the authority to determine the questions of the validity and construction of the Insurance act, and of the rights of the petitioner thereunder. The defendants argue against the proposition. Section 1 of the Declaratory Judgments act (2 Cum. Supp. Comp. Stat. p. 2834;P.L. 1924 p. 312) provides:
"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." *Page 544 
Section 2 of said act provides:
"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."
The constitutionality of this act was passed upon by the court of errors and appeals in the case of McCrory Stores Corp. v.S.M. Braunstein, Inc., 102 N.J. Law 590; 134 Atl. Rep. 752.
Where a criminal prosecution is undertaken, the act under which it proceeds may, in my opinion, be tested through a petition for a declaratory judgment. Tirell v. Johnston, Attorney-General
(N.H., 1934), 171 Atl. Rep. 641; affirmed, 79 L.Ed. 222.
The petitioner claims that his glazing business is not insurance as comprehended by the provisions of the Insurance act of 1902, with its amendments and supplements. He alleges this his service contracts call (1) for the tightening of clamps and bars in store fronts so as to keep the plate glass in firm condition and thus avoid breakage, and (2) to replace any glass which may become broken during a certain period of time. Is this service then, insurance within the meaning of the Insurance act? Insurance is defined in 32 C.J. 975 § 1, as follows:
"Broadly defined, insurance is a contract by which one party, for a compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee acertain or ascertainable sum of money on a specifiedcontingency." (Italics mine.)
Bankers Health and Life Insurance Co. v. Knott, 41 Ga. 639;In re O'Neill's Estate, 255 N.Y. Supp. 767; Draper v. Delaware,c., Fire Insurance Co., 91 Atl. Rep. 206. In Commonwealth v.Wetherbee, 105 Mass. 149, the court defined a contract of insurance to be "an agreement by which one party, for a consideration, promises to make a certain payment *Page 545 of money upon the destruction of or injury to something in whichthe other party has an interest." (Italics mine.) SmithCommercial Law 299; May Ins. §§ 1, 2; Phil. Ins. § 1, are to the same effect. Nowhere in the complainant's contract does it appear that he "promises to pay * * * a certain or ascertainable sum of money on a specified contingency." No money payment is required to be made in case of breakage.
Counsel on both sides pay considerable attention to an opinion of the supreme court of Pennsylvania rendered in 1897, in the case of Commonwealth of Pennsylvania v. Provident BicycleAssociation, 178 Pa. 636; 36 L.R.A. 589. The question involved in that case was whether the business operated by the defendant was one prohibited by the provisions of the Insurance act of Pennsylvania, which act is not unlike our Insurance act. The defendant there issued to its members a membership card which contained an agreement whereby it undertook to do the following: "(1) To clean member's bicycle twice during the year; (2) repair tire when punctured by accident; (3) repair bicycle when damaged by accident; (4) replace bicycle when destroyed by accident; (5) replace bicycle when stolen, if not recovered in eight weeks, and provide a bicycle during that time." Because of the emphasis laid upon the opinion by petitioner's counsel, and its disputed application by the defendants, I deem it advisable to quote therefrom the points material to the issue in the present suit. The court there said: