LOUIS SOLOMON AND ANOTHER, RESPONDENTS, v. NEW JERSEY INDEMNITY COMPANY, A CORPORATION, APPELLANT.

Submitted March 18, 1920—Decided June 14, 1920.

It is a subsidiary rule in construing a contract by an agent that where nothing appears in the body of the contract to indicate the maker, and it is subscribed by a person who adds words to his signature indicating that he signs in a representative capacity, the obligation is *prima facie* that of the person subscribing; but this presumption is disputable and parol evidence is admissible to show the intention of the parties and the right of the signer to bind the person whom he claims to have represented.

On appeal from the East Orange District Court.

Action to recover under a policy of insurance issued by the New Jersey Indemnity Company, attorney in fact. Whether the defendant is a partnership, an incorporated association or a corporation does not appear except as averred in the state of demand. The words "a corporation" appear in the title of the cause but not in the policy. The policy is signed "New Jersey Indemnity Company, attorney in fact. E. M. Carroll, President." By the terms of the policy "Subscribers to Motor Car Underwriters at New Jersey Indemnity Exchange severally agree to indemnify the Subscriber named herein" against certain specified losses, subject to conditions, the most important of which for the present purpose are that the amount of the loss shall be ascertained by the subscriber and the attorney (*i. e.,* the attorney in fact), or if they differ by

two appraisers, one named by the attorney and one by the subscriber; in the event of their disagreement an umpire is, to be chosen and the award in writing of two appraisers or an appraiser and the umpire is to fix and determine the amount of damage. The exchange and the subscriber are each to pay his own appraiser and to bear equally the other expenses of the appraisers and the umpire. No suit is to be brought until this condition has been complied with. Upon payment of any loss, the exchange is to be subrogated to the extent of the loss to all rights of recovery by the subscriber. The exchange may take over and conduct in the name of the subscriber the defence or prosecution of any claim or suit for indemnity, damages, or otherwise against any third party. The word "Exchange" and the word "Subscriber" are capitalized, as above indicated; whether "the Exchange" has any particular meaning, and if so what it is, does not appear. The contract may be canceled by either party upon five days' prior written notice to the other. Notice of cancellation mailed by either party to the other's address "herein given" is declared to be sufficient notice. "No action by a Subscriber shall lie against the attorney or any of the subscribers at the Exchange to recover for any loss under this contract unless brought by the Subscriber himself." To avoid a multiplicity of suits, no suit or other proceeding at law or in equity was to be maintained for the recovery of any claim upon, under or by virtue of the contract, against more than one of the subscribers *hereat.* Each subscriber *hereat* agrees to accept and abide by the result as if he had been sole defendant in a similar suit or proceeding. The attorney is authorized to receive and admit service of process. The policy declares that "the Subscribers at the Motor Car Underwriters, herein called Exchange, are individuals, firms and corporations that have each executed an agreement [hereby made a part hereof] which vests in the New Jersey Indemnity Company, herein called Attorney, power to issue this contract for them." It is understood and agreed that there is assumed by each subscriber, as if a separate contract were issued therefor, a sum which is the same proportion of the aggregate liability hereunder that

each subscriber's advances bear to the aggregate of all subscriber's advances under all contracts in effect at the time of the loss. Whenever the word "contract" occurs herein, it means, and shall be taken and construed to mean, this contract in its entirety, which is issued to the subscriber named herein in exchange for, and in consideration of, indemnity extended by him to other subscribers. No condition or provision of this contract shall be altered or waived except by written endorsement attached hereto and signed by the attorney at the "Exchange." The policy concludes with an attestation that the Subscribers to Motor Car Underwriters at New Jersey Indemnity Exchange have caused these presents to be signed by their attorney, and then follows the signature in the form already set forth. No agreement, such as is said to have been executed by the Subscribers to Motor Car Underwriters, herein called Exchange, and made part of the policy, is produced, nor are the names of the underwriters made known.

Before Justices SWAYZE and PARKER.

For the respondents, *J. Victor D'Aloia.*

For the appellant, *Merritt Lane.*

The opinion of the court was delivered by

SWAYZE, J. The provisions of the policy set forth in the above state of facts show that it is an anomalous one, and the difficulty in the case arises out of the inartistic way in which the contract is drawn. It resembles the Lloyds policies, which were before the court in *Enterprise Lumber Co.* v. *Mundy,* 62 *N. J. L.* 16, but no names are signed to it, nor is the alleged agreement signed by the subscribers produced, nor was there proof in the trial court, as far as the state of the case shows, of their names or identity. The contract, plainly, was a contract by an agent for unnamed principals. The question to be decided is whether the agent is liable. The case comes within the rule thus stated by Pollock (*7th Eng.*

*ed.* 99) : "When the principal is not named, although the agent is known to be an agent, *prima facie* the agent binds himself personally, the other party not being presumed to give credit exclusively to an unknown principal." The case is thus likened to the case where the principal resides abroad. Williston, in his new treatise on the law of contracts, properly criticises the broad statement in some of the cases as to the universality of the rule. *Willis. Cont.,* § 285. We think the question is to be determined in each case by the intention of the parties ascertained in accordance with settled rules of construction and in view of all the language of the contract. It is a subsidiary rule in construing a contract by an agent that where nothing appears in the body of the contract to indicate the maker, and it is subscribed by a person who adds words to his signature indicating that he signs it in a representative capacity, the obligation is *prima facie* that of the person subscribing; but this presumption is disputable, and parol evidence is admissible to show the intention of the parties and the right of the signer to bind the person whom he claims to have represented. *Phelps* v. *Weber,* 84 *N. J. L.* 630; *Sadler* v. *Young,* 78 *Id.* 594; *Kean* v. *Davis,* 21 *Id.* 683. The cases cited are cases where it was not only known that the agent was an agent but his principal was named. The rule applies with greater force where the principal is unnamed. *Prima facie,* the policy in suit is the contract of New Jersey Indemnity Company, the present defendant. There was no parol proof to explain or qualify the liability. Does anything appear in the body of the policy to indicate the contrary? The language of the policy is confused. In some places it indicates that the subscribers are liable; in other places that the exchange (whatever that may mean) is liable; in other places that the attorney in fact is liable. If the principal were named we should have more difficulty, but, as the attorney is *prima facie* liable and the principals are not named, we have no difficulty in reaching the conclusion that the attorney in fact is liable. This finds support in the provision that the loss should be ascertained by the subscriber and the attorney; that if they differ each should appoint an

appraiser; that the exchange and the subscriber should pay the appraisers and the umpire; that the attorney should have the right and opportunity to inspect the vehicles insured; that the exchange should be subrogated to the subscriber's rights of recovery; that the contract may be canceled by either of the parties, evidently contemplating only the insurer and the assured, and indicating by the word "either" that there were but two parties to be notified, thus excluding the idea that all the subscribers, who might be very numerous, should be notified; that no action should lie against the attorney unless brought by the subscriber himself, clearly indicating by the exception which proves the rule that the subscriber himself might sue the attorney; that power is vested in the New Jersey Indemnity Company by the subscribers at the Motor Car Underwriters, herein called exchange, to issue the policy for them; that no condition or provision of the contract shall be altered or waived except by written endorsement attached hereto and signed by the attorney at the. exchange.; and that notice to, or knowledge possessed by, any agent or other person shall not be held to effect a waiver or change in any part of the contract. Looking at all these provisions in a broad way to reach the real intent of the parties, and not merely with grammatical, rhetorical, or even legal nicety, although these support the same view, we think the contract was meant to be a contract of insurance by the New Jersey Indemnity Company, acting not as agent for the subscribers but as an insurance company, in which the subscribers were interested pretty much as stockholders, liable to contribute a certain amount by way of subscription to the liability of the indemnity company from time to time to the extent of a proportionate share of each separate loss as it occurred and limited to an obligation to pay the proportion of the aggregate liability as set forth in paragraph "O" of the policy. In this view the New Jersey Indemnity Company is the medium by which each subscriber fulfilled his obligation to indemnify each of his fellow-subscribers who suffered a loss, and received from each of his fellow-subscribers the in-

demnity to which he was entitled. The case differs from a Lloyds policy, such as was before us in the Enterprise Lumber Company case, in that there each underwriter specified the amount he underwrote; here there must be an ascertainment of each subscriber's proportion of the aggregate liability; to ascertain that proportion there must be some machinery. We can find none provided unless it is the New Jersey Indemnity Company, the insurer, backed by the obligation of the subscriber to put it in funds. This view throws some light on the curious use of the word "Exchange."

It is suggested, although not really argued, and although the point was not made in the trial court, that there was no evidence that the defendant had power to insure against accident. We are at a loss to know at what point this suggestion is directed. The charter of the New Jersey Indemnity Company, if it had a charter and was a corporation, is not produced, and, for all the evidence shows, the words may be only a trade name for individuals, or an unincorporated association. In either case the Insurance act does not forbid individuals from transacting the business of insurance. *Schenck v. State,* 60 *N. J. L.* 381. Although the title of the act has been changed since the decision in Schenck *v.* State, we do not find that any change in the act itself prohibits individuals from making insurance contracts. If however, the point of attack is that the state of demand avers that the defendant was duly incorporated with power to insure against accident, and there was no proof of the power, then the defendant by failing to traverse the averment or raise the point orally at the trial, precludes itself from relying thereon on this appeal, even if it had been definitely raised in the specifications of the grounds of appeal.

Let the judgment be affirmed, with costs.