264 N.J. Super. 359 (1993)
624 A.2d 1003
AFRICAN BIO-BOTANICA, INC., PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
SALLY LEINER, T/A ECCO BELLA, DEFENDANT-APPELLANT-CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 17, 1993.
Decided May 10, 1993.
*360 Nagel & Rice, attorneys for appellant-cross-respondent (Marc A. Futterweit, on the brief).
Mark H. Rochkind, attorney for respondent-cross-appellant.
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff African Bio-Botanica, Inc. sued defendant "Sally Leiner, individually and t/a Ecco Bella," in the Special Civil Part to recover $1530 as the unpaid purchase price of merchandise that it had sold and delivered to her. Ms. Leiner is the sole stockholder, director, and president of Ecco Bella Incorporated, a New Jersey *361 corporation that was formed October 28, 1987, and that continued in existence during all times pertinent to the law suit. Ms. Leiner defended against plaintiff's claim solely on the ground that the merchandise had been ordered by and delivered to Ecco Bella Incorporated, and that the liability was solely that of the corporation.
The case was tried to the court. The evidence showed that plaintiff began selling merchandise to Ms. Leiner or to her corporation in December 1987. African Bio-Botanica, Inc. did not conduct any credit investigation. It did not inquire or, insofar as appears from the evidence, think about, whether its customer was an individual or a corporation. It sold the first six or seven orders for cash on delivery. Plaintiff's sales manager delivered two of the early shipments to Ms. Leiner's home, where she repackaged the merchandise for resale to retail customers. Later orders were directed to "Ecco Bella" at Ms. Leiner's address and shipped on fifteen days' credit. Initially, plaintiff's records listed Sally Leiner as the customer; subsequently, Ms. Leiner's name was whited out and the name, Ecco Bella, was substituted, without any indication that it was a corporation.
The order for the merchandise that is the subject matter of this law suit was placed either by Ms. Leiner herself or by others at her direction. Plaintiff addressed its bill for the purchase price to "Ecco Bella." That bill admittedly remains unpaid. Plaintiff received payment for prior orders by checks imprinted with the name "Ecco Bella." Ms. Leiner's company's letterhead also read "Ecco Bella." Neither the checks nor the letterhead carried the name "Ecco Bella Incorporated" or otherwise indicated that Ecco Bella was a corporation. Plaintiff's sales manager testified, without contradiction, that no one had told him Ecco Bella was a corporation and he did not know that it was.
The trial judge held that Ms. Leiner's failure to affirmatively disclose the corporate status of her company led the plaintiff to believe that it was a sole proprietorship and that, since it had not filed a trade name certificate, N.J.S.A. 14A:2-2(1)(d) required it to *362 indicate its corporate status on its letterhead, presumably by using its full corporate name, Ecco Bella Incorporated. For those reasons, the judge ruled that Ms. Leiner was personally liable for plaintiff's unpaid bill, and he entered judgment for $1530, but he did not award prejudgment interest.
Ms. Leiner has appealed from the judgment. African Bio-Botanica, Inc. has cross-appealed, challenging the court's denial of pre-judgment interest. For the following reasons, we modify the judgment to award interest from the date the complaint was filed, and we otherwise affirm.
We agree with the trial judge that for Ms. Leiner to be shielded from personal liability, she was required to affirmatively disclose to plaintiff that she was acting as agent for Ecco Bella Incorporated. She failed to make her representative capacity clear. We therefore affirm, but we prefer to offer a somewhat different rationale for our decision from that adopted by the trial court.
The statutory section on which the trial judge relied reads as follows:
(1) The corporate name of a domestic corporation or of a foreign corporation authorized to transact business in this State
....
(d) Shall contain the word "corporation," "company," "incorporated," or shall contain an abbreviation of one of those words, or shall include the abbreviation Ltd. or shall contain words or abbreviations of like import in other languages, except that a foreign corporation which does not have those words or an abbreviation thereof in its name shall add at the end of its name one of those words or an abbreviation thereof for use in this State.

[N.J.S.A. 14A:2-2(1)(d).]
Ms. Leiner's corporation complied with that requirement because its official corporate name was Ecco Bella Incorporated.
Arguably, Ecco Bella Incorporated violated N.J.S.A. 14A:2-2.1:
(1) No domestic corporation, or foreign corporation which transacts business in this State within the meaning of section 14A:13-3, shall transact any business in this State using a name other than its actual name unless
(a) It also uses its actual name in the transaction of any such business in such a manner as not to be deceptive as to its actual identity; or

*363 (b) It has been authorized to transact business in this State, using an assumed name as provided in subsection 14A:2-2(3); or
(c) It has first registered the alternate name as provided in this section.
The corporation transacted business under the name "Ecco Bella," which was not its real name. It did not also use its actual name, "Ecco Bella Incorporated," as required by paragraph (a), and it did not comply with either of the other exceptions contained in paragraphs (b) and (c). According to N.J.S.A. 14A:2-2.1(6), a corporation which is obligated to register an alternate name and has failed to do so may not "maintain an action or proceeding in any court of this State arising out of a contract or act in which it used such alternate name until it has filed" the required registration. A tardy registration will require payment of back fees and, possibly, a penalty, but the failure to file "shall not impair the validity of any contract or act of such corporation and shall not prevent such corporation from defending any action or proceeding in any court of this State...." By implication, the failure to register an alternate name does not itself permit the draconian remedy of subjecting the corporation's stockholder and president to personal liability. See John R. MacKay 2nd, 1 New Jersey Business Corporations, Law and Practice § 2.27 (1992).
A corporation acts only through its agents. See e.g. Templeton v. Scudder, 16 N.J. Super. 576, 582, 85 A.2d 292 (App.Div. 1951). In the present case, Ms. Leiner claims that when she entered into contracts with plaintiff for the purchase of its products, she did so only on behalf of her corporate principal, Ecco Bella Incorporated. Whether or not she is personally liable on those contracts must therefore be determined in accordance with the law of principal and agent. See Looman Realty Corp. v. Broad Street Nat. Bank of Trenton, 32 N.J. 461, 476-79, 161 A.2d 247 (1960); 3A William M. Fletcher, Fletcher Encyclopedia of the Law of Private Corporations § 1118 (perm. ed. rev. vol. 1986); cf. MacKay, supra, §§ 7.27-7.30.
Unless the parties agree otherwise, an agent who enters into a contract for an undisclosed or for a partly disclosed principal is personally liable on the contract; an agent who contracts on *364 behalf of a fully disclosed principal is not personally liable on the contract. Looman, supra, at 476-78, 161 A.2d 247; Solomon v. New Jersey Indemnity Co., 94 N.J.L. 318, 110 A. 813 (Sup.Ct. 1920), aff'd o.b. 95 N.J.L. 545, 113 A. 927 (E. & A. 1921); Fletcher, supra, §§ 1118, 1120.[1] The Restatement (Second) of Agency § 4 (1958) defines "disclosed principal," "partially disclosed principal," and "undisclosed principal" as follows:
(1) If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is a disclosed principal.
(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal.
(3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an undisclosed principal. [Emphasis added.]
"Notice" is defined as follows:
(1) A person has notice of a fact if he knows the fact, has reason to know it, should know it, or has been given notification of it.
(2) A person is given notification of a fact by another if the latter
(a) informs him of the fact by adequate or specified means or of other facts from which he has reason to know or should know the facts; or....
[Restatement (Second) of Agency § 9 (1958).]
In the present case, the court found as a fact, with adequate support in the record, that African Bio-Botanica, Inc. was not informed and did not know that Ecco Bella was a corporation. The record gives no indication that African Bio-Botanica, Inc. was "inform[ed] of other facts from which [it] ha[d] reason to know or should [have] know[n]" that Ecco Bella was a corporation. Consequently, according to the Restatement definition, it did not have "notice" that Ecco Bella was a corporation unless the law is that it should have asked and, therefore, had "reason to know" or "should [have] know[n]" of its customer's corporate status even if it did not ask.
*365 Fairness and expediency dictate a contrary rule. The agent who seeks protection from his status as agent has the means and the motive to communicate that status to the person with whom he is dealing. If the person with whom the agent is dealing does not know of the agency and has no reasonable way to know except by asking, the agent has the burden of disclosing his agency and the identity of his principal in order to avoid liability on contracts which he makes. In that situation the person with whom the agent is dealing has no duty to inquire. Fletcher, supra § 279, states:
A corporate agent is required to disclose his or her agency status in order to avoid personal liability. This is in keeping with the general agency principle that if an agent fails to reveal his or her true status as agency, he or she is bound as principal. The duty of disclosure clearly lies with the agent alone, so that a third party with whom the agent deals has no duty to discover the existence of the agency or to discover the identity of the principal. Accordingly, the agent is not relieved from personal liability on the contract involving an undisclosed or partially disclosed principal merely because the party with whom he or she deals had the theoretical means of discovering that the agent was acting only in a representative capacity. [Footnotes omitted; emphasis added].
See Jensen v. Alaska Valuation Service, Inc., 688 P.2d 161, 163 n. 2 (Alaska 1984) ("[A]n agent is personally liable unless he or she makes it clear that he or she is acting on behalf of a principal....").
If an agent conducts business candidly as an agent for a disclosed principal, he should be readily able to prove that he disclosed his agency. The allocation of the burdens of proof between the purported agent and the third party with whom he deals reflects this reality:
One bringing an action upon a contract has the burden of showing that the other is a party to it. This initial burden is satisfied if the plaintiff proves that the defendant has made a promise, the form of which does not indicate that it was given as agent. The defendant then has the burden of going forward if he wishes to show that his promise was made only as an agent and that this should have been so understood.

Restatement (Second) of Agency, supra, § 320 Comment b (emphasis added).
New England Marine Contractors v. Martin, 156 A.D.2d 804, 549 N.Y.S.2d 535, 536 (1989) (the agent must prove that he informed plaintiff at the time they entered into the contract that he was *366 acting on behalf of a corporate principal); Matsko v. Dally, 49 Wash.2d 370, 301 P.2d 1074, 1076-77 (1956) (the agent has the burden of proving that his capacity and the identity of his principal were disclosed).
In the present case, the evidence shows that Ms. Leiner entered into an oral purchase contract, either directly or through a sub-agent acting at her direction. She therefore has the burden of proving that she disclosed that she was buying merchandise solely as an agent on behalf of Ecco Bella Incorporated, a corporation. The trial court found that she did not sustain that burden. The fact that African Bio-Botanica, Inc. had the opportunity to inquire did not put it on notice that its customer was a corporation. See Jensen v. Alaska Valuation Service, Inc., supra, 688 P.2d at 163. If Ms. Leiner was acting as an agent for her corporation, she was an agent for an undisclosed or partially disclosed principal and she was therefore personally liable on its purchase contracts.[2]
The debt was fully liquidated. Ms. Leiner's obligation therefore includes interest from the date the complaint was filed. Cf. Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478-479, 541 A.2d 1063 (1988). If the parties are unable to agree on the amount of interest, it shall be fixed by the trial court. The judgment is modified by the inclusion of interest and, as so modified, affirmed.
NOTES
[1] See Restatement (Second) Agency § 321 ("Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract"); but cf. id. at § 328 ("An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance.")
[2] In MacKay, supra § 7.30, the author points out that other jurisdictions have held that an agent who discloses that he is acting for a corporation will be treated as an agent for a partially disclosed principal if he identifies the corporation only by its trade name or without using its corporate designator. Mr. MacKay argues that that rule, if applied to a case where the party contracting with the agent has no doubt about his principal's identity and corporate character, would be artificial and unfair. He predicts that New Jersey courts will not follow such a rule. The argument is persuasive, but we have no occasion to decide the issue in this case and we therefore will not do so.