In re Susan J. VINALES,
Involuntary Debtor.

Precision Steel Manufacturing
Company, Adventure
Entertainment, Inc.,

and

Miller Roofing, Inc., Petitioners,

v.

Susan J. Vinales, Respondent.

No. 01–01531.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Oct. 26, 2001.

Howard J. Beck, Jr., Gentry Locke Rakes and Moore, Tommy Joe Williams, Roanoke, VA, Harry F. Boren, Salem, VA, for plaintiffs.

William B. Hopkins, Martin, Hopkins & Lemon, P.C., Roanoke, VA, for defendant.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the court involves an involuntary petition filed by Precision Steel Manufacturing Company, Adventure Entertainment, Inc., and Miller Roofing, Inc. (hereinafter Petitioners) against Susan J. Vinales (hereinafter Vinales), d/b/a Business Service Associates and Waltony, Inc. The Petitioners contend agency law principles dictate that Vinales is personally liable on their claims because she conducted business as a corporate officer on behalf of an undisclosed or partially disclosed principal. The Petitioners argue in the alternative that the doctrine of corporate disregard can be employed to find Vinales liable on their claims. Vinales filed a motion requesting dismissal and attorney's fees, costs, and damages. Vinales asserts that the involuntary case should be dismissed because the claims filed by Petitioners are the subject of a bona fide dispute, per 11 U.S.C. § 303(b).[1] A hearing on the motion to dismiss was held on August 14, 2001, in the courtroom of the Old

Federal Building, Roanoke, Virginia. Based on the evidence heard at the hearing, on the arguments of counsel and the memoranda of authorities submitted in support thereof, and on the court's research and analysis, the court concludes that the Petitioners are unable to satisfy the statutory requirements of 11 U.S.C. § 303(b); thus, the motion to dismiss is granted.

### Background

On April 6, 2001, the Petitioners filed an involuntary petition against Susan Vinales, the secretary/treasurer of Waltony, Inc., d/b/a Business Service Associates. The petition initiated a chapter 7 bankruptcy proceeding under Title 11 of the United States Code. Vinales filed a motion to dismiss on May 16, 2001. A hearing was held on the motion to dismiss on June 12, 2001, at which time the court allowed the parties to submit memoranda addressing whether Vinales should be held personally liable for business debts because "Business Service Associates" was not registered as the fictitious name of Waltony, Inc. and Vinales conducted business on behalf of Business Service Associates. The parties submitted memoranda and numerous affidavits. A second hearing was held on August 14, 2000, at which time the court took the matter under advisement.

The involuntary petition was based on claims arising out of the operations of Waltony, Inc., undisputably doing business as Business Service Associates. Business Service Associates is a business that provides accounting services for its clients, including the preparation, filing, and payment of payroll and taxes. The Petition-

[1]. In pertinent part, 11 U.S.C. § 303(b) states: An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute....

ers were clients of Business Service Associates for several years. Among other things, Business Service Associates was authorized to withdraw funds from the respective bank accounts of the Petitioners to meet their tax withholding liabilities. The withdrawn funds were to be deposited into an alleged trust account so that Business Service Associates could make payments to the taxing authorities on behalf of the Petitioners when the taxes became due.

Sometime in or about February 2000, the Petitioners were contacted by state and federal taxing authorities demanding payment of taxes. It was at this time that the Petitioners learned that funds were being wrongfully diverted from the trust account. Approximately $1,000,000.00 was allegedly diverted from this account. Petitioners allege that Vinales failed to remit the withholding taxes to the taxing authorities during the same time that the funds were diverted. The Petitioners argue that Vinales is personally liable under principles of agency law as an agent acting on behalf of an undisclosed or partially disclosed principal.[2] More specifically, the Petitioners contend that Susan Vinales is personally liable because she acted on behalf of Business Service Associates, which was not registered as the fictitious name of Waltony, Inc.[3] Petitioners allege that at no time were they ever informed of the corporate status of Waltony, Inc. or of the relationship of Business Service Associates to Waltony, Inc.[4] Petitioners also contend

---

**2.** The court is unable to divine from the Petitioners' Memorandum in Opposition to the Debtor's Motion to Dismiss the precise basis of their claim against Susan Vinales. The Petitioners allege that money was wrongfully diverted and that withholding taxes were not remitted to the taxing authorities, and then Petitioners baldly assert that Vinales is personally liable either as an agent acting on behalf of an undisclosed principal or as an officer of the corporation by piercing the corporate form. The court is puzzled because the Petitioners did not explain the basis of their claim, e.g., breach of contract, conversion, or some other legal theory.

Since the Petitioners are attacking Vinales under an agency theory, it appears that they are claiming that Waltony, Inc. breached its contract with the Petitioners by failing to remit the withheld funds to the taxing authority and that Vinales is liable for that breach since she is an agent of an undisclosed principal. Then again, the Petitioners may be claiming that Vinales was involved with or responsible for the acts associated with the missing funds; thus, she is liable for the conversion or some other similar tort. Although the court is not able to pin down the exact nature of the Petitioners' asserted claim, the court believes it can adjudicate the matter *sub judice.*

**3.** Virginia Code § 59.1–69 states the following:

No person, partnership, limited liability company or corporation shall conduct or transact business in the Commonwealth under any assumed or fictitious name unless such person, partnership, limited liability company or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the names of each person, partnership, limited liability company or corporation owning the same.

**4.** For example, Petitioners supplied the court with the Declaration of Patricia C. Meador, an employee of Miller Roofing, Inc. for the last seven years. Meador declared that neither she nor any other employee of Miller Roofing, Inc. was ever advised of the corporate status of Waltony, Inc. or Business Service Associates, and that any assertion by Vinales to the contrary is purely fallacious. Presumably, this declaration was submitted to rebut the affidavit of Walter Vinales, wherein he avers that Miller Roofing, Inc. had actual knowledge that Business Service Associates was incorporated under the name of Waltony, Inc. Although it was not argued by the parties, the court recognizes that if Miller Roofing were somehow barred from recovering from Susan Vinales, based on its knowledge of the corporate status of Business Service Associates, then there would remain only two petitioning creditors, which would not satisfy the numerical requirement of 11 U.S.C.

that Susan Vinales can be found individually liable by piercing the corporate veil by virtue of her actions as an officer of Waltony, Inc.

Vinales responds to the contentions by arguing that there is no Virginia authority to hold her individually liable on account of her failure to register a fictitious name. Vinales further contends that she never contracted with any of the Petitioners, and that at least one of the petitioning creditors was informed of the corporate status and name of Waltony, Inc. Vinales further avers that an employee of Waltony, Inc., Jeffrey Loar, embezzled the missing funds.[5] She contends that the alleged embezzlement occurred without her consent, authorization, or knowledge. When the Petitioners confronted Vinales about the missing funds, she informed the Petitioners that they had contracted with Waltony, Inc., and that Business Service Associates was merely a trade name. Vinales concedes that she did not file a certificate of a fictitious name, nor did she take any other steps to properly register the name "Business Service Associates." Still, she argues that liability for the Petitioners' claims cannot be directed toward her, but that Waltony, Inc. or Jeffrey Loar may be liable. In short, Vinales contends that the Petitioners' claims are the subject of a bona fide dispute.

*Ruling of Law*

 An involuntary case may be commenced by the filing of a petition by "three or more entities, each of which is either the holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute." 11 U.S.C. § 303(b)(1). A claim that is subject to a "bona fide dispute" is one that has an objective basis for either a factual or a legal dispute as to the validity of the debt. *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987). The court is not required to determine the outcome of the dispute; it is sufficient to find, by a limited analysis, that a bona fide dispute is present. *See In re Busick*, 831 F.2d at 750. The burden is on the petitioning creditors to establish that the statutory requirements for commencing an involuntary case under 11 U.S.C. § 303 have been satisfied. *See Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715–16 (4th Cir.1993); *Rubin v. Belo Broadcasting Corp. (In re Rubin)*, 769 F.2d 611, 615 (9th Cir.1985). If the petitioning creditors are successful, the burden shifts to the involuntary debtor to present evidence showing that a bona fide dispute does exist. *Subway Equipment Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 221 (5th Cir.1993).

Petitioners contend that their claims are not the subject of a bona fide dispute because the facts show that Vinales engaged in business under the name of Business Service Associates, for which a fictitious name certificate was not filed pursuant to Va.Code § 59.1–69. Accordingly, she was acting as an agent for an undisclosed principle. The Petitioners alternatively plead that by piercing the corporate veil, Vinales, the Secretary/Treasurer of Waltony, Inc., can be

---

§ 303(b). At the very least, the conflicting facts regarding the notice of Miller Roofing, Inc. may raise questions pertaining to the Petitioners' eligibility to file an involuntary petition.

5. Vinales alleges that Jeffrey Loar was indicted by the Roanoke County Circuit Court on multiple counts of embezzlement. Vinales further alleges that the Petitioners requested the Commonwealth's Attorney to drop the state charges so the U.S. Attorney's Office could investigate and prosecute Loar under federal law. Notably, there is no indication that Susan Vinales is under investigation for the alleged embezzlement by either the state or federal government.

held personally liable for the transactions giving rise to their claims. The court is not convinced that the Petitioners have made a prima facie case that their claims are not the subject of a bona fide dispute. The court will address each of the Petitioners' contentions in turn.

### Agency: Personal Liability for an Agent Acting on behalf of an Undisclosed Principal

■ Virginia Code § 59.1–69 prohibits entities from conducting business in the Commonwealth under an assumed or fictitious name unless the entity signs a certificate identifying the fictitious name. The purpose of this provision is to protect third parties against possible fraud and deceit. *See Tate v. Atlanta Oak Flooring Co.,* 179 Va. 365, 18 S.E.2d 903 (1942); *Bryant Elec. Co. v. Joe Rainero Tile Co.,* 84 F.R.D. 120, 123 (W.D.Va.1979) ("The purpose of this section is to prevent fraud and to compel an individual or a corporation to disclose the name of the real owner of the business, in order that the person or corporation may sue in or be sued by the proper name."). Failure to comply with this provision is chargeable as a misdemeanor, the conviction of which is punishable by a fine up to $2,500 or by incarceration not to exceed one year, or both. *See* Va.Code § 59.1–75. More relevant, however, is the legal effect of noncompliance with Va.Code § 59.1–69. An entity that does not comply with the provisions pertaining to the use of a fictitious name cannot maintain an action in any court in the Commonwealth unless and until the certificate required by Va.Code § 59.1–69 has been filed. *See* Va.Code § 59.1–76. Section 59.1–76 does not render a cause of action illegal, it merely suspends the right to maintain it until the party has complied with the law. Although it may not be dispositive, it is worth noting that the Virginia Legislature has not specifically provided for the personal liability of directors or officers of entities that have not complied with the fictitious name provisions. Accordingly, there is an argument that Va.Code §§ 59.1–75 & 1–76 are the exclusive sources for determining the legal impact that noncompliance with the fictitious name provision will have on a party. The General Assembly certainly had the ability to provide for the personal liability of directors and officers of noncomplying entities, but such a provision is not found in the statute. The court takes notice of this fact and the questions it raises.

Notwithstanding the above question, the court is also satisfied that the Petitioners' claims are the subject of a bona fide dispute, even according to the legal theories advanced by the Petitioners. The Petitioners cite a slew of cases and sources from learned treatises for the well-established principle that an agent acting on behalf of an undisclosed or partially disclosed principal is personally liable for those transactions in which the agent was involved. The court tends to agree with the Petitioners that the use of a trade name or a fictitious name that is not properly registered is not sufficient identification of a principal to protect an agent from personal liability for business transactions engaged in between a third party and an agent who is acting on its principal's behalf. *See, e.g.,* 150 A.L.R. 1303 (majority position is that the use of a trade name is not sufficient disclosure of the identity of the principal and of the fact of agency). The court believes, however, the Petitioners' application of this well settled legal standard to the instant matter is misplaced.

One case heavily relied on by Petitioners is *Hoskins Chevrolet, Inc. v. Hochberg,* 294 Ill.App.3d 550, 229 Ill.Dec. 92, 691 N.E.2d 28 (1998). In *Hoskins,* the president of Diamond Auto Body & Repair, Inc. was

held personally liable for breach of contract and account stated arising out of a purchase of auto parts from Hoskins Chevrolet, Inc. for which he contracted as an agent of Diamond Auto Construction. *Id.* at 31, 294 Ill.App.3d at 555, 229 Ill.Dec. 92, 691 N.E.2d 28. Diamond Auto Construction was the unregistered assumed name of Diamond Auto & Repair, Inc. *Id.* Illinois state law, similar to Va.Code § 59.1–69, requires that any assumed name be clearly disclosed. 805 ILCS 5/4.15(b)(2). The *Hoskins* court found that the use of an unregistered fictitious name did not create a legal entity, nor did it inform creditors of the existence of a "parent corporation." *Id.* (citation omitted). Accordingly, the Appellate Court of Illinois determined that the president of Diamond Auto & Repair, Inc. was personally liable for the contracts he entered into on behalf of Diamond Auto Construction because the company was neither a corporation nor the assumed name of a corporation; thus, contract liability could not be established in anyone other than the agent. *Id.* at 31, 294 Ill. App.3d at 555, 229 Ill.Dec. 92, 691 N.E.2d 28.

Petitioners also cite *Lachmann v. Houston Chronicle Publishing Co.,* 375 S.W.2d 783 (Tex.Civ.App.1964). In this case, Houston Chronicle Publishing Co. sued Lachmann for the unpaid balance on a written contract for advertisements to be published in the Houston Chronicle. *Id.* at 784. The contract signed by Lachmann bore the following: "Company: Artcraft Mattress Company and House of Unpainted Furniture, By: Arno Lachmann." *Id.* The parties stipulated that neither Artcraft Mattress Company nor Unpainted Furniture was a corporate entity at any relevant time material to the contract. *Id.* The parties further stipulated that these two companies were trade names under the corporation known as Household Manufacturing Company, Inc., but that the name of the parent corporation was not identified in the contract. *Id.* The *Lachmann* court recited the rule that "[i]t is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of the principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal." *Id.* at 785. The court then noted that the contract, as signed, did not disclose that it was signed in a representative capacity. *Id.* Thus, the court held that Lachmann made himself liable by contracting in his own name without disclosing the name of his principal, and that the use of a trade name was not sufficient disclosure of the identity of the principal and of the fact of agency. *Id.* See also *In re Scheuermann,* 1993 WL 35138 (E.D.La.1993), which is cited by the Petitioners as another example of an agent being held personally liable for a transaction in which the agent failed to disclose his agency status.

Although this court cannot authoritatively pronounce Virginia law on this matter, it feels confident that the principles articulated in *Hoskins* and the other cases cited by Petitioners would be embraced by Virginia courts; however, this is not to say that the Petitioners' application of these cases to the present matter would be accepted by the courts of the Commonwealth because the Petitioners arguably construe the cases in a manner that significantly enlarges the scope of the law discussed in those cases. To be sure, the cases discussed by the Petitioners are representative of the well-settled principle that an agent is under a duty to disclose the fact of agency if he or she is to escape liability for transactions entered into on behalf of a principal. Furthermore, the use of an unregistered assumed or fictitious name is not sufficient evidence of the agency relationship to prevent the agent

from being liable for transactions he or she enters into. What the cases do not stand for is the proposition that an officer is personally liable for any or every transaction performed or entered into by an entity operating under an unregistered fictitious name or by its purported agents. In other words, each person held individually liable in the above cited cases personally transacted with the party seeking redress, i.e., entered into a binding contract. It is upon this factual basis that the cases cited by the Petitioner are distinguishable from the instant matter.

Here, the Petitioners merely allege that money was diverted and that Vinales is liable. Petitioners did not allege a satisfactory explanation of the link between the treatment of funds giving rise to their claims and Vinales. Nor did they clearly explain the precise transactions in which Vinales participated, as an agent for the Business Service Associates, that may give rise to personal liability on her part. Furthermore, the Petitioners did not proffer sufficient evidence regarding the relationship between the parties that may give rise to personal liability. Lastly, this court does not believe that the case law regarding agency liability can be construed so broadly as to conclude that Vinales, by virtue of her position as a mere officer of Waltony, Inc., can be held liable as an agent for the transactions giving rise to the asserted claims in which her personal participation is not sufficiently clear. The cases cited by the Petitioners do not sweep so broadly. In each case where personal liability was established, it was clear that the agent participated in the business dealings giving rise to the suit. *See Hoskins,* 294 Ill.App.3d at 551–52, 691 N.E.2d 28

(The president contracted for the purchase of auto parts which gave rise to the breach of contract claim when the account was not paid.); *Lachmann,* 375 S.W.2d at 784 (Lachman personally signed the contract purchasing advertisements for which he was sued for breach of contract upon nonpayment of the advertising expense); *In re Scheuermann,* 1993 WL at *1 (Scheuermann entered into an oral contract to sell a car). The legal theory advanced by the Petitioners to hold Vinales personally liable as an improperly disclosed agent of Business Service Associates or Waltony, Inc. is not free from bona fide disputes, on both a factual and legal basis.[6]

### Piercing the Corporate Veil

The Petitioners argued in the alternative that Vinales can be found liable by piercing the corporate veil. It is an elementary proposition that a corporation is a legal entity, completely separate and distinct from its shareholders. *Cheatle v. Rudd's Swimming Pool Supply Co.,* 360 S.E.2d 828, 830, 234 Va. 207, 212 (1987). The immunity from personal liability of stockholders beyond the extent of their contribution to the capital stock represents vital economic policies that underlie the whole corporate concept. *Beale v. Kappa Alpha Order,* 192 Va. 382, 397, 64 S.E.2d 789, 797 (1951). Accordingly, "a decision to refuse to recognize this immunity constitutes an extraordinary exception to be permitted only when it becomes necessary to promote justice." *Cheatle,* 360 S.E.2d at 830, 234 Va. at 212 (quotations omitted). A court's decision whether to disregard the corporate form significantly depends on the resolution of questions of fact, recog-

---

**6.** Petitioners' failure to adequately allege and explain the basis of their underlying claim, e.g., breach of contract or embezzlement, etc., only enhances one's ability to point out the presence of a bona fide dispute. Naturally, the absence of a clearly pleaded claim for relief does little to clarify the nature of the disputations at issue, but, in fact, aids a party in asserting the presence of a bona fide dispute, as it did so here.

nizing that the burden of proof rests upon the party seeking to pierce the veil. *Id.* In Virginia, a plaintiff is required to show that "the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally." *Id.* (citing *Lewis Trucking Corp. v. Commonwealth*, 147 S.E.2d 747, 753, 207 Va. 23, 31 (1966)). Furthermore, as stated in *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir.1992), proof that some person "may dominate or control" the corporation, or "may treat it as a mere department, instrumentality, agency, etc." is not enough to pierce the veil. A party seeking to pierce the veil "must also establish 'that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Id.* at 548 (quoting *Cheatle*, 360 S.E.2d at 831, 234 Va. at 212). *See also Garrett v. Ancarrow Marine, Inc.*, 180 S.E.2d 668, 211 Va. 755 (1971); *Lewis Trucking Corp. v. Commonwealth*, 147 S.E.2d 747, 207 Va. 23 (1966); *Beale*, 64 S.E.2d at 797–98, 192 Va. at 396.

◼ The court is not convinced that piercing the corporate veil is a viable legal doctrine to hold Vinales personally liable. Vinales is the secretary/treasurer of Waltony, Inc. Petitioners have not submitted any cogent evidence to the court indicating her status as a shareholder. In fact, Vinales declared in an affidavit that she does not own any shares of Waltony, Inc. If it is true that Vinales is not a shareholder, she cannot be held liable by piercing the corporate veil. The court is not aware of the veil piercing doctrine being applied to reach officers of a corporation. Indeed, the reported cases in Virginia disregard the corporate fiction to reach shareholders. It appears to this court that the application of this doctrine of law to the facts is truly the subject of a bona fide dispute.

However, even if there is a colorable argument that veil piercing may be relied upon to hold an officer personally liable, the court is not convinced that the failure to register a fictitious name would justify veil piercing in the case here. In *African Bio–Botanica, Inc. v. Leiner*, 624 A.2d 1003, 264 N.J.Super. 359 (N.J.Super.Ct.App.Div.1993), the court refused to pierce the corporate veil based on the failure to register the alternate name of a company. African Bio–Botanica Inc. sued Sally Leiner, the president and sole shareholder of the Ecco Bella Inc., for the unpaid purchase price of merchandise. *Id.* at 1004, 264 N.J.Super. at 360, 624 A.2d 1003. The purchase records originally listed Leiner as the purchaser, later her name was replaced by Ecco Bella, without any indication that the latter was a corporation. The purchase orders giving rise to the law suit were either placed by Leiner herself or by another at her direction and neither the checks nor the letterheads bore the name Ecco Bella Incorporated. As discussed by the Superior Court, New Jersey law prohibits corporations from transacting business "using a name other than its actual name" unless "[i]t has first registered the alternate name." *Id.* at 1005, 264 N.J.Super. at 362–63, 624 A.2d 1003 (discussing N.J.S.A. 14A:2–2.1(1)). In a nearly identical manner as the Virginia statute, the New Jersey statute also dictates that a corporation that has failed to register an alternate name may not "maintain an action or proceeding in any court of th[e] state." Making an implication from the express statutory provisions pertaining to the failure to register an alternate name, the *African Bio–Botanica* court stated that the "the failure to register an alternate name does not itself permit the draconian remedy of subjecting the corporation's stockholder and president to personal liability." *Id.* (citing John R.

McKay 2d, 1 New Jersey Business Corporations, Law and Practice § 2.27 (1992)).[7]

The court also finds the case of *Przybyl v. Chelsea Motor Inn,* 105 Ill.App.3d 942, 61 Ill.Dec. 715, 435 N.E.2d 204 (1982) instructive on the matter. *Przybyl* was cited and discussed in the *Hoskins* case relied on by Petitioners. *See Hoskins,* 294 Ill. App.3d at 555, 229 Ill.Dec. 92, 691 N.E.2d at 30. In *Przybyl,* the court discussed whether a corporation's unauthorized use of an assumed name would justify piercing the corporate veil to impose personal liability on shareholders for the alleged negligence of a corporate employee. *Przybyl,* 105 Ill.App.3d at 942, 61 Ill.Dec. 715, 435 N.E.2d at 205. The *Przybyl* court refused to hold a shareholder liable for torts of corporate employees absent some allegation of fraud or misrepresentation by the shareholders, notwithstanding the corporation's use of an authorized assumed name. *Id.* at 205–06, 105 Ill.App.3d at 944, 61 Ill.Dec. 715, 435 N.E.2d 204.

Here, again, the application of law to the facts cannot be characterized as free from bona fide disputes. Moreover, the reported cases discovered by this court, which appear sound in their analysis and application of the law, seem to cut against the position offered by the Petitioners. "Only an extraordinary exception will justify disregarding the corporate entity, and no such exception is present here." *Cheatle,* 360 S.E.2d at 831, 234 Va. at 212. At this point, the court must conclude that Petitioners' claims are indeed the subject of a bona fide dispute.

### Additional Considerations Evidencing the Presence of a Bona Fide Dispute

Even if the Petitioners could be considered to have made a prima facie case that their claims are not tainted by bona fide disputes, Vinales has raised substantial questions of law and fact in response to the Petitioners' claims. First, the claims may be attributable solely to the tortious actions of Jeffrey Loar, the employee of Business Service Associates; thus, he, if anyone, should be liable. Second, even considering the failure to register the fictitious name of Business Service Associates, liability of Vinales for the embezzled funds has not been clearly alleged. Nor is it clear that she is somehow personally liable to the Petitioners on a contractual basis for allegedly failing to remit the withheld funds. In fact, Walter Vinales avers that Susan Vinales did not participate in the contracting of any of the Petitioners. In reply, the Petitioners contend that there was no written contract and that the parties had an on going relationship with Business Service Associates. Thus, it is not clear just how, if at all, Susan Vinales interacted with the Petitioners, and how those interactions are related, if at all, to the claims for wrongfully diverted funds or for unremitted funds. Petitioners also supplied the court with a declaration from Sharon Forbes and an affidavit from Jeffrey Loar. Sharon Forbes declared that Susan Vinales was in control of the operating account of Business Service Associates and did the billing for the clients of Business Service Associates. Jeffrey Loar stated that he was directed by Vinales to write checks on the alleged trust account to Susan Vinales or for the personal expenses of Walter and Susan Vinales. But, it is not clear that those checks, whether improperly drawn or not, are related to the diverted funds that make up the Petitioners' claims. Further-

---

**7.** Applying the law of principal and agent, the court ultimately held that Leiner was personally liable for the purchase orders because she placed the orders as an agent of an undisclosed principal. *African Bio–Botanica, Inc.,* 624 A.2d at 1007, 264 N.J.Super. at 366.

more, the court is cognizant of the criminal investigation involving Jeffrey Loar and evaluates his affidavit with caution. In the end, the Petitioners' claims based on agency, on disregard of the corporate shield, and on violations of Va.Code § 59.1–69, may be plausible. However, the facts are not undisputed and there does not appear to be a reported Virginia state court decision addressing similar facts for this court to rely on and confidently analyze the Petitioners' claims. Basically, Vinales has convinced this court that substantial questions exist that when assessed by an objective standard "raise a reasonable contention 'as to the application of law to undisputed facts.'" *In re Busick*, 831 F.2d at 750 (citing *In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich. 1986)).

### *Conclusion*

For the reasons stated above, it appears to the court that the Petitioners' claims are indeed the subject of a bona fide dispute and the court concludes that the Petitioners are unable to satisfy the requirements of 11 U.S.C. § 303(b). Accordingly, it is

### ORDERED

That the motion to dismiss the involuntary case against Susan Vinales is GRANTED and the petition against her is DISMISSED, and it is

### FURTHER ORDERED

That a pre-trial conference on the issue of damages, attorney's fees and costs shall be heard by video conference on November 29, 2001 at 3:00 p.m. in the *Bankruptcy Courtroom, Room 212, Old Federal Building, Corner Second Street and Church Avenue, Roanoke, Virginia.*