**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0659-24

WILLIAM RIKER AND ANNA
RIKER,

     Plaintiffs-Appellants,

v.

KING PENNA AND
KINGMAKER STRATEGIES,
LLC,

     Defendants-Respondents.

_____

Argued November 17, 2025 – Decided January 2, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1132-22.

Michael D. Mezzacca argued the cause for appellants (Bourne, Noll & Kenyon, attorneys; Michael D. Mezzacca, of counsel and on the briefs).

King Penna, respondent, argued the cause on respondent's behalf.

PER CURIAM

This appeal stems from a dispute over the personal liability for the repayment of a promissory note, in which plaintiffs William and Anna Riker maintain they agreed to lend defendants King Penna and his LLC, Kingmaker Strategies, $70,000. After plaintiffs sued both defendants for failing to repay the $70,000 loan and additional $7,000 in interest, the court granted their motion for summary judgment against defendant Kingmaker Strategies, but denied their summary judgment application against defendant King Penna and, in turn, granted King Penna's cross-motion for summary judgment as to his personal liability. The court subsequently denied plaintiffs' motion for reconsideration, leading to this appeal.

Before us, plaintiffs contend the promissory note unambiguously establishes that King Penna expressly assumed personal liability for the note. They further assert, to the extent there is any ambiguity, it should have been resolved by a jury. We disagree with all of plaintiffs' arguments and accordingly affirm the court's orders.

I.

King Penna is a political consultant who operates his political consulting business through Kingmaker Strategies. The June 16, 2020 note is "between

2

Kingmaker Strategies LLC, King Penna managing member, and William and Anna Riker" and provides:

> William and Anna Riker agree to lend Kingmaker Strategies LLC, King Penna the sum of $70,000 for the time frame of 65 days. Repayment will occur no later than August 20th, 2020.
>
> Kingmaker Strategies LLC, and King Penna agree to pay back the note of $70,000 plus interest of a flat fee of 10% equal in $7,000 for a total of $77,000 on or before August 20th, 2020.

The note contains three signature lines. Below two of the signature lines are Anna and William Riker's names in pre-printed text. The third lists "Kingmaker Strategies[,] LLC" and "King Penna[,] managing member." The names appear on separate lines with Kingmaker Strategies above King Penna. Plaintiffs both signed the note above their names, and King Penna signed the note once below the pre-printed text of his name and Kingmaker Strategies.

On September 3, 2020, after the date that the loan and interest became due, the parties extended the repayment period to October 12, 2020, rather than enforce the note's terms, for an additional $3,000. The extension note includes the following language:

> This note is extended [forty-five] days from September 3rd to October 12, 2020 with repayment on or before, October 12th, 2020. Kingmaker Strategies LLC will pay Anna & Bill Riker an[] additional $3,000 in interest

3

A-0659-24

for this extension [for a] total of $80,000. If payment
is not made on or before the October 20th, an additional
interest of $100 per day will be accrued.

Below this language are three additional signature lines, with plaintiffs' names in text above two of them, and "King Penna[,] Managing Member" above the third. Both plaintiffs signed the note, and King Penna again signed the note once below his name.

After defendants failed to make any payment for several years, plaintiff filed a complaint seeking "$80,000 plus interest accruing since October 20, 2020, as well for attorneys['] fees, costs and such further relief as the Court deems equitable and just." Plaintiffs' certification, filed in support of their summary judgment motion, was signed only by Anna Riker and reiterated her understanding of the note. It stated, "[t]he [n]ote is explicit that [Kingmaker Strategies] as well as King Penna individually are liable . . . ." It does not include any statements from William Riker. King Penna supported his cross-motion with his deposition testimony and own certification, in which he stated that "only [Kingmaker Strategies] . . . signed the [p]romissory [n]ote and [e]xtension [a]greement and thereby promised to repay . . . [plaintiffs]."

After considering the parties' written submissions and oral arguments, the court granted summary judgment against Kingmaker Strategies, denied

4

A-0659-24

plaintiff's summary judgment application as to King Penna, and granted King Penna'a cross-motion for summary judgment. In its oral decision, the court explained "the terms of the contract are clear and unambiguous," as the note pertained to Kingmaker Strategies. On the issue of King Penna's personal liability, the court found the note was also unambiguous and found it expressly stated, in the second paragraph, that the note is between "Kingmaker Strategies, LLC, King Penna, managing member, and William and Anna Riker." The court determined the absence of separate signature lines for King Penna and Kingmaker Strategies supported King Penna's understanding, and the court's conclusion, that he was not personally liable.

The court also referenced the extension note which only named Kingmaker Strategies and omitted any mention of King Penna as further proof of the lack of his personal liability. Further, the court held "[e]ven if, however, [the note] created an ambiguity regarding . . . personal liability[,] plaintiff has not offered any parol[] evidence supporting the proposition that King Penna . . . obligated himself personally."

Plaintiffs filed a motion for reconsideration supported by an additional certification, this time jointly signed by William and Anna Riker, in which they articulated "it was . . . our intent that King Penna be liable individually" at the

A-0659-24

time when they entered into the contract. In written notation on the court order, the court rejected plaintiffs' application because it reflected their disagreement "with this court's decision . . . [which] is not a basis for reconsideration." The court also concluded, relying on Lawson v. Dewar, 466 N.J. Super. 128, 134 (App. Div. 2021), that the interests of justice did not warrant reconsideration.

II.

This appeal followed in which plaintiffs raise the following arguments. First, plaintiffs contend the court erred in denying their summary judgment application against King Penna for $77,000 because the promissory note was unambiguous as to his personal liability and, therefore, should be enforced as written. They contend the first paragraph of the contract unambiguously establishes King Penna as obligated to repay the debt in his individual capacity. Although they concede "[t]he second paragraph is poorly worded," they argue there is an implied "and" between the names of Kingmaker Strategies and King Penna, which they maintain reflects his assumption of personal liability. They claim the subsequent paragraphs of the note do, in fact, include a conjunction between the names and further support King Penna's personal liability, and argue the trial court "tortured the clear terms of the note to, sua sponte, create an ambiguity."

A-0659-24

Second, plaintiffs assert the court found an ambiguity in the note from the lack of two signature lines. Because of that ambiguity in the contract, plaintiffs contend a jury should have decided whether King Penna was personally liable. They argue, as drafter of the note, ambiguity should be construed against King Penna. They maintain their certification included in support of their reconsideration application further establishes that the note presents a question of fact to be decided by a jury.

## III.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

7

We apply the abuse of discretion standard when reviewing an order denying reconsideration. Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Est. of Kotsovska by Kotsovska v. Liebman, 221 N.J. 568, 588 (2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div.), certif. denied, 127 N.J. 548 (1991)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." Schor, 357 N.J. Super. at 191 (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). To determine the meaning of an agreement, the terms of the contract must be given their "plain and ordinary meaning." Ibid. "A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to

8

A-0659-24

the words' plain meaning." Ibid. The contract, however, must also be viewed and interpreted as a whole, not by examining phrases individually. Nester, 301 N.J. Super. at 210.

The primary purpose of forming a corporation, such as a limited liability company is to insulate its members from the liabilities that accompany a business enterprise. State of N.J., Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983). Indeed, N.J.S.A 42:2C-30 provides "[t]he debts, obligations, or other liabilities" of an LLC are "solely the debts, obligations, or other liabilities of the company" and do not become obligations of a member or manager "solely by reason of the member acting as a member or manager." As a general matter, "[a] corporation acts only through its agents." African Bio–Botanica, Inc. v. Leiner, 264 N.J. Super. 359, 363 (App. Div. 1993). Thus, unless expressly assumed, even if an LLC has one sole member, personal liability is precluded because "an agent who contracts on behalf of a fully disclosed principal is not personally liable on the contract." Id. at 363-64 (citations omitted).

A recent opinion from our Supreme Court establishes the three scenarios under which a corporate representative expressly assumes personal liability and can be held liable for a corporate debt. See Extech Bldg. Materials, Inc. v. E&N

9

Construction, Inc., ___ N.J. ___, ___ (slip op. at 19).  In that case, the plaintiff, a building materials supplier, agreed to provide the defendant, a construction company, with building supplies.  Id. at ___ (slip op. at 3).  The plaintiffs provided the defendants with a two-page document entitled "CREDIT APPLICATION AND AGREEMENT" to govern the transaction.  Ibid.  The agreement contained six numbered paragraphs, including a provision that stated the signers:  "DO PERSONALLY GUARANTEE UNCONDITIONALLY, AT ALL TIMES, . . . THE PAYMENT OF INDEBTEDNESS . . . OF THE WITHIN NAME[D] FIRM."  Id. at ___ (slip op. at 4).

Immediately following paragraph six, the agreement contained three signature lines, each prompting the defendant's corporate representatives to provide their printed names, signatures, and a witness's signature.  Id. at ___ (slip op. at 4-5).  Under the line for their signatures, the pre-printed words "No Title" appeared.  Ibid.  The two corporate representatives each printed and signed their names, including a witness's signature and leaving the third-line blank.  Id. at ___ (slip op. at 5).  After the defendant failed to remit payment, plaintiff brought suit against the defendant and their corporate representatives, alleging the corporate representatives were personally liable for the company's debt under the agreement.  Ibid.

A-0659-24

The Court concluded the agreement did not hold the corporate representatives personally liable. Id. at ___ (slip op. at 19). To assume personal liability, the Court held a corporate representative must take one of the three following actions: "(1) execute a separate personal guaranty agreement; (2) sign the underlying agreement once as a corporate representative and again individually; or (3) sign the underlying agreement a single time, provided that the agreement explicitly states their single signature binds both the company and the representative individually." Id. at ___ (slip op. at 3).

Applying these principles here, we are satisfied the note before us demonstrates none of these three scenarios, and plaintiffs do not allege King Penna, as a corporate representative, performed any of these actions. As detailed above, the second paragraph of the note provides, "William and Anna Riker agree to lend Kingmaker Strategies LLC, King Penna the sum of $70,000 for the time frame of 65 days." There is, however, a single signature line for King Penna, in which he signed once as managing member and for the corporate entity, Kingmaker Strategies. The fact that King Penna's name is in the body of the text does not support the conclusion that he was personally liable for the note, when all of the text including the signature lines is considered.

A-0659-24

To be sure, the note has no "separate personal guaranty," does not contain two signatures from King Penna "once as a corporate representative and again individually," and contains no language that "explicitly" binds King Penna and Kingmaker Strategies to the single signature. Extech Bldg. Materials, Inc., at ___ (slip op. at 3). In the later extension of the note, only Kingmaker Strategies is mentioned directly and King Penna signed it once as managing member, further supporting the conclusion both parties understood there was no assumption of personal liability. Finally, the aforementioned principles underlying limited liability corporations provide further support for the conclusion King Penna is not personally liable.

In sum, we agree with the court that the record fails to create a genuine and material factual question with respect to King Penna's personal liability. Plaintiffs' self-serving certifications are belied by the competent evidence presented by King Penna including the language of the note itself that does not include a personal guaranty, the single signature line, and the nature of the transaction and the LLC's role. "[S]elf-serving assertions, unsupported by documentary proof in their dominion and control, '[are] insufficient to create a genuine issue of material fact.'" Miller v. Bank of America Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015) (quoting Heyert v.

12

Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013)). We are satisfied the court correctly granted King Penna's cross-motion for summary judgment and denied plaintiffs' motion and did not abuse its discretion in denying reconsideration.

To the extent we have not addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0659-24